Turner
v.
Burrows.

## TURNER vs. BURROWS.

Where a *policy of insurance*, is executed *in blank*, thus, "By the Niagara Insurance Company. Silas E. Burrows, on account of
do      make insurance, and cause      to be insured,
lost or not lost, upon the body, tackle, &c. of the good American brig, called," &c. *it seems,* that the policy may be filled up by the holders with the names of the persons intended to be insured, or with the words *whom it may concern,* and that extrinsic evidence may be given of the persons so intended to be insured.

Evidence that a policy thus executed *in blank* is deemed by insurance companies and the commercial community equivalent to a policy *for account of whom it may concern,* is inadmissible.

It is not the duty of a *ship's husband,* as such, to insure a vessel; and neither he nor part owners who insure the interest of their co-owners in a vessel without express authority, can recover the *premium* paid by them.

*It seems,* that an insurance effected by a joint owner upon the interest of his co-owner in a vessel, although done without authority, if subsequently ratified by the party to be benefitted, may be enforced against the insurer; but if such insurance of the *vessel* was coupled with an insurance on the *freight* and *cargo* also, and the party effecting the insurance intended the whole as a joint adventure, he is not liable to his co-owner for his proportion of the monies obtained from the insurer on the loss of the vessel, unless the co-owner consents to participate with him in the whole transaction.

ERROR from the supreme court. Turner sued Burrows, to recover *one sixth* of the amount of monies received by the latter, under a policy of insurance on a brig, in which the parties were jointly interested, the plaintiff owning *one sixth,* and the defendant five sixths of the vessel. The declaration contained the common money counts. On the 17th January, 1827, the defendant being the sole owner of the vessel, transferred one sixth of her to the plaintiff, for the consideration of $1608. On the 19th January the defendant made application to an insurance company to insure the vessel in these words : "Eight thousand dollars insurance on brig Burrows, Turner master, valued at *my interest* eight thousand $ to, at and from New-York and Carthegena; she is nearly loaded, and expects to sail Wednesday next if ready." The words *my interest* were partly blotted out or obliterated. The company underwrote a policy at $8000. In the policy many *blanks* were left unfill-

ed ; it commences thus : " By the Niagara Insurance Company of New-York. Silas E. Burrows, on account of do             make insurance, and cause             to be insured, lost, or not lost, at and from New-York to Carthagena, and at and from thence  back to New-York, upon the body, tackle, apparel another furniture of the good American brig called the Burrows," &c.  The vessel was lost, and on the 28th March, 1827, the defendant gave notice to the company of her loss, and abandoned *vessel, freight* and *cargo*, stating the vessel to have been  insured at $8000, the freight at $1000, and the cargo at $1011.  The company paid the whole sum of $8000 insured on the vessel to the defendant, although they had notice previous  to such payment that the plaintiff claimed to be entitled to *one sixth* of the amount.

The president of the insurance company testified that while the application for the payment of the loss was pending, he was present at a conversation between the parties, in 'which the plaintiff insisted  that one sixth of the insurance had been effected on his account, and so notified the company ; that the plaintiff admitted that he had not given orders  to the defendant to make  insurance on the vessel, and that the defendant then made an offer to the plaintiff, if he would consider himself as interested in one sixth in the vessel, cargo and freight, as was originally intended, he would settle with him on that basis ; to  which the plaintiff objected, insisting  that he was interested in one sixth of the vessel only.  The plaintiff did not deny the original intention as  stated by the defendant, nor did he admit it.  The insurance broker, who was employed by the defendant to adjust his claims upon the company, testified that having discovered from the papers that the plaintiff had an interest in the vessel, he mentioned it to the defendant, who said that his *original intention was to cover the plaintiff's interest* as well as his own.  On his cross-examination, he stated that the defendant told him, that at the time of effecting the insurance, *he intended to cover the plaintiff's interest*, but that the plaintiff had disavowed being concerned in the cargo ; he, the witness, saw from the documents that there was a loss on the cargo nearly total, thought it exceeded $1500 ; he understood

from the defendant that he was the ship's husband and had the sole management; the defendant complained that the plaintiff had refused to come in and bear a part of the loss on the cargo; that the plaintiff had disavowed or disowned having any thing to do with the cargo, and would not settle with him on that basis; that the insurance company understood the thing between the plaintiff and him and would pay him; that he was willing to account to the plaintiff for one sixth of the insurance on the vessel, if the plaintiff would bear his part of the loss on the cargo. He further stated that the defendant no doubt rested under the belief that the plaintiff was concerned in the cargo, and thought that he always contended that the plaintiff was to have an interest of one sixth of the cargo; he complained that the plaintiff would not take it, but made no impression upon the mind of him, the witness, that the plaintiff was bound by any contract to take part of the cargo; but when the defendant made the insurance, he, the witness, thought he did it under the impression that the plaintiff was to take one sixth of the cargo. The plaintiff proved a letter of the defendant, in which he acknowledged that five sixths of the cargo belonged to himself, and the remaining sixth to the captain of the vessel, a son of the plaintiff, to oblige whom the plaintiff had bought the sixth of the vessel.

The plaintiff offered to prove that it is a common usage for insurance companies to underwrite policies *in blank* similar to the policy given in evidence in this case, and that the universal understanding of the companies and of the mercantile community is, that such a policy is tantamount to a policy containing the words, "for account of whom it may concern," and that when a policy is so made it is understood that the party effecting the insurance is to shew when a loss is claimed, for whose account the insurance was made, and that the underwriters pay according to the interest so shewn; which evidence was objected to, and refused to be received: whereupon, no further evidence being offered on the part of the plaintiff, the counsel for the defendant moved for a nonsuit, which was granted. The plaintiff tendered his bill of exceptions, and applied to the supreme court to set aside the nonsuit, and to

order a new trial, which application was refused, and the court gave judgment for the defendant. The plaintiff thereupon su- ed out a writ of error. See opinion of supreme court, 5 Wen- dell, 541.

*J. L. Wendell,* for plaintiff in error. The only true question here is, whether the facts and circumstances of this case ought not to have been *submitted to the jury,* for them to determine whether or not there was an *agreement* on the part of the de- fendant to *insure* as well the interest of the plaintiff as his own in the vessel lost; and whether the jury ought not to have been instructed, that if they found such agreement, the law im- plied a *promise* on the part of the defendant to pay to the plain- tiff his proportion of the monies received from the insurance company. That the jury would have been warranted in find- ing such agreement is most manifest : the defendant was the ship's husband, he had agreed to fit her for sea in every particular, he had the sole management of her, the relation ex- isting between the parties was of so peculiar a character, and the admissions of the defendant so conclusive, that a jury would not only have been warranted in finding, but could not have avoided to find such agreement; and if so the plaintiff ought not to have been *nonsuited. Lawrence* v. *Sebor,* 2 Caines, 205. It is not necessary that an *express* agreement should be proved ; it is sufficient, if from the facts and circumstances, it may be *implied.* The admission of the plaintiff, that he had not given *orders* to the defendant to affect insurance, made *una voce,* with the assertion of his claim to a proportion of the money received on the loss of the vessel, could not outweigh all the other evi- dence in the case ; it was a bare admission that *formal instruc- tions* had not been given, whilst at the same time he substan- tially asserted that it was the *understanding* of the parties that the defendant should insure his interest, which understanding, or meeting of minds, or agreement, the defendant admitted, when he acknowledged that at the time he effected the insu- rance, *he intended to cover the defendant's interest.* But, conce- ding the agreement to have been as the defendant alleged, that the plaintiff was to participate in the loss of the *freight* and *cargo,* the refusal of the plaintiff to carry such agreement into

effect did not deprive him of his right of action; had the case been submitted to the jury, and had they found the agreement to have been as alleged by the defendant, the only effect would have been to reduce the amount of the plaintiff's recovery from $1333 to $1083, and not to defeat his action.

This is the only view of this case deemed necessary on the part of the plaintiff to present. Other questions were discussed and passed upon in the court below, and probably will again be agitated on the part of the defendant, which, in an action between the plaintiff and the insurers, might be interesting, but which, with all possible respect, are deemed foreign to this action; they, however, will be briefly considered. And first, as to the offer to prove the understanding that a policy *in blank* is equivalent to a policy " for account of whom it may concern," it is conceded it was correctly excluded, for it would have been proving by witnesses the *law* of the land, which is not admissible. That such is the law of the land, however, is contended, and that evidence shewing *who is the party* intended to be insured, where the policy is *in blank*, is as admissible as when the policy is *for whom it may concern*. Parol evidence in such a case does not disannul, or vary or extend a written contract; it simply supplies an *omission* in an instrument not required by law to be *in writing*, and assists its operation by pointing out and connecting it with the subject matter. A policy may be by *parol*. Phil. on Ins. 4. 4 Yeates' R. 468. As to evidence in aid of a written instrument, 3 Stark. Ev. pt. 4, 1001, 1020, 1047, 1055. 1 Phil. Ev. 476. 1 Wils. 215. 4 Wendell, 45. A policy *in blank* was the ordinary practice in England until prohibited by statute. 1 Condy's Marshall, 306. We have no such statute. As to proof of commercial usage, Starkie's Ev. pt. 4, 453, 455, 1038. 3 Johns. C. 4. When the policy is *on account of the owners* without naming them, who the owners are may be shewn by extrinsic evidence. 1 Wendell, 576. 4 id. 75, in error. See also 13 Mass. R. 161. 2 Maule & Sel. 485. 2 Caines, 205. 7 Cowen, 336. 2 Maule & Sel. 90. 1 Wentworth's Pl. 409, n. If parol proof was not admissible to shew the persons intended to be insured, the policy might have been rendered operative in

*equity.* Starkie's Ev. pt. 4, 1018. Here the insurers themselves made it effectual by paying the money. Had it been necessary to sue the insurers, the action must have been in the names of both parties, (Turner and Burrows.) If an action on a policy is brought in the name of one, two being interested, the variance is fatal. 2 Phil. Ev. 52. 16 East, 141. 5 Taunt. 101. 6 id. 14. 1 Marshall, 416. The whole amount having been paid to the defendant by the insurers with full knowledge of the facts, they cannot recover back the portion belonging to the plaintiff. Starkie's Ev. pt. 4. 1171. 2 East, 469.

*G. F. Tallman,* for defendant in error. The defendant's interest in the vessel was equal to the whole amount insured, and *his* interest only was covered by the policy. A policy upon a whole vessel will cover an interest less than the whole, and the assured will recover according to the extent of his interest shewn at the trial. Phil. on Ins. 64. 2 Cains, 203. 1 Johns. R. 386. 11 id. 302. 1 Wendell, 575. 4 id. 75. The interest of the plaintiff was not covered by the policy, he is not named in it, nor are there general words in it, such as " whom it may concern," under which he might shew that he was a party assured. No one but the party on whose account a policy is effected can enforce it. 1 Phil. on Ins. 58, 61. It is not allowed to shew that the *intent* was to cover the interest of a party not named, 2 Cranch, 419 ; and even where a policy was effected by a joint owner, as property might appear, without the clause " for whom it may concern," it was held that the interest of a co-owner was not covered. 4 Mass. R. 647. The plaintiff did not direct the defendant to insure his interest ; and had the defendant done so without orders, he could not have recovered the premium. It was not the defendant's duty as ships's husband to insure the interest of the plaintiff. Marshall on Ins. 297. 5 Burr. 2727. Had the plaintiff previously or subsequently effected insurance on his portion of the vessel in another office, the underwriters in this case could not have availed themselves thereof under the clause in the policy relative to other insurances. Although the defendant said

that he intended to cover the plaintiff's interest, be in fact did not do so ; and the whole of his admissions amount to no more than a generous design to permit the plaintiff to partake in the benefit of the insurance effected by himself, on his agreeing to share in the loss of the freight and cargo. The defendant was under no obligation to do what he offered to do, nor was there any consideration for the offer. The evidence of usage and commercial understanding offered by the plaintiff, and rejected by the court, was inadmissible. Phil. on Ins. 14 to 17. Starkie's Ev. pt. 4, 1009.

The following opinions were delivered :

By the CHANCELLOR. The plaintiff on the trial of this cause offered to prove that it was a common usage for insurance companies to underwrite policies *in blank*, similar to the one given in evidence by him, and that the usual understanding of the companies and of the mercantile community was, that such a policy was tantamount to a policy containing the words, *for account of whom it may concern*. I am inclined to think this was an offer to prove what the law is, by the opinions of commercial men, which certainly is not admissible.

Previous, however, to the statute 25 Geo. 3, ch. 44, which required the name of the insured or that of his agent to be inserted in the policy, it was unquestionably the practice of the English underwriters to sign their policies with the name of the assured *in blank*, which authorized his agent to fill it up in such manner as he thought proper. If such a custom prevails in the insurance offices in this country, I see no objection which could arise to the filling the blank in this policy with the names of any persons who are legally entitled to the benefit thereof, and if the words, *for whom it may concern*, were inserted in the blank, they could not have extended its legal effect any further. Even a contract within the statute of frauds, which is left in blank, under an express agreement that a contract of guaranty may be written over the name of the defendant, may be filled up at the trial according to that agreement. *Nel-*

*son* v. *Dubois*, 13 Johns. R. 175. *Joselyn* v. *Ames*, 13 Mass. R. 274. I shall, therefore, in considering this case, treat this policy as one in which the person who procured it to be underwritten had authority to insert the names of all or any of the owners of the brig who had any interest in the policy, or to fill up the blank with the words " whom it may concern."

The question then arises whether the plaintiff had any equitable right to a part of the insurance money as between him and the defendant. This is an action for money had and received, which is an equitable action ; and if the plaintiff has no equitable right to the money as between him and the defendant, he cannot recover it from him, whatever may be his legal rights against the underwriters. It is admitted that the plaintiff never requested the defendant to insure his interest in the brig, but it is said he was the *ship's husband*, and therefore was bound to insure the interest of both. The duties of a ship's husband are to see to the proper out-fit of the vessel, that she is properly repaired, prepared for the voyage, and furnished with provisions and sea-stores ; to provide a proper master, mate and crew ; to see that she has a proper register and documents on board, and is duly cleared from the custom house ; to engage and settle for freight, and adjust averages ; to enter into charter parties for the employment of the ship ; and to settle and pay, and keep a regular account of all contracts, payments and receipts in the course of such employment. In relation to all these matters, he is the general agent of the owners, and may charge them jointly ; but as relates to the ship itself, each owner has a distinct and separate interest as a tenant in common, which such owner may or may not insure at his pleasure, and the ship's husband has no authority to insure, either the whole or any part of the vessel, without the express direction of the owner thereof. In *French* v. *Backhouse*, 5 Burrows' R. 2727, the plaintiff was appointed by two joint owners of a vessel the ship's husband, with the usual powers. He insured the ship and brought an action for the amount of premiums he had paid, and it was decided by Lord Mansfield and the whole court that he had no authority as ship's husband to insure. So, in *Bell* v. *Humphries and others*,

2 Starkie's R. 345, where there were five owners of a ship, and two of them, who were the managing owners, or ship's husbands, procured the whole vessel to be insured, Lord Ellenborough decided that they had no authority to insure the interest of the other three owners in the vessel, and that the latter were not liable for the premiums of insurance. The case of *Lawrence* v. *Sebor*, 2 Caines' R. 203, was not an insurance on the ship, but an insurance by one of two joint owners of the *cargo*, upon their joint interest; and the majority of the court held that the acting partner was bound to insure for both, but two of the judges, even in that case, considered the insurance as on his part of the cargo only. In the case under consideration it is therefore evident that Burrows had no authority to insure Turner's share in the brig, and that the latter was not liable to him for any part of the premiums of insurance which had been paid to the underwriters.

There are some cases where it has been held that an insurance made by an agent of an owner, or other person having an interest, was good as against the underwriters, if the act was afterwards sanctioned by the principal, although the insurance was originally effected without authority. *Lucena* v. *Crawford*, 1 Taunt. 325. *Roath* v. *Thompson*, 13 East's R. 274. *Hagedorn* v. *Oliverson*, 2 Maule & Sel. S. 485. In all these cases, however, it will be seen that the contest was between the *owner* or his agent on the one hand, and the *underwriters* on the other; and that they were decided upon the principle that a consent given to what has been done by one acting as an agent without authority, has as against a third party a retrospective operation. In this case, if the insurance was intended to be made for the benefit of both parties, although without authority on the part of Burrows, if the arrangement made by him had been sanctioned by Turner, there might have been a legal recovery against the underwriters for the benefit of both; but I apprehend the plaintiff had no right to consider Burrows as his agent as to one part of this business, and to disaffirm his acts as to the other. Although the brig was bought by the father, yet it is evident that Burrows considered Captain Turner, the son, as the person who was in fact to be benefitted by the purchase and freighting of the

brig. One of the witnesses understood from the conversation between the parties that the plaintiff had bought one sixth of the vessel to oblige his son; and in the memorandum appended to the agreement of the 17th of January, the day of sale, the brig is referred to as belonging in fact to Captain Turner. It is therefore evident to my mind that Burrows treated the whole as a joint adventure between himself and the son, although the ownership of the one sixth of the brig was in the father nominally, and that he intended to insure the whole of their joint interest in the brig, freight and cargo, for the benefit of himself and Captain Turner. Under these circumstances, if the father chose to repudiate a part of the transaction as not legally binding on him, Burrows was justified in saying he had no equitable claim to any part of the fund arising out of that transaction.

If the plaintiff ever had any legal claim against the underwriters, he must look to them for payment; and if he seeks to recover this money from the hands of Burrows in this equitable form of action, he must first do equity by bearing his portion of the loss. I think the judgment of the supreme court should be affirmed.

By Mr. Senator ALLEN. This was an action to recover a portion of the money received by the defendant in error, on a policy of insurance on the brig Burrows, and the main question to be considered is, does any part of the money received by the defendant in error from the Niagara Insurance Company belong to the plaintiff in error? It is contended by the plaintiff that the policy was effected for the joint benefit of both parties, in proportion to their several interests in the vessel. The policy however, purports to insure the interest of Silas E. Burrows, and no other; and the question has been well settled, that unless a policy contain some general clause to the contrary, no other than those named as the assured, or on whose account it is expressed to be made, can avail themselves of it.

The written application of the defendant was in these words: "Eight thousand dollars on brig Burrows, Turner master, valued at *my interest*, eight thousand dollars." There is a blot on the word *my*, and a stroke over the word *interest*, which circum-

stances were urged by the counsel for the plaintiff, as indicating an intent on the part of the defendant to strike out these words from the application, in order that other interests than that of the defendant might be covered ; but, as the president of the company testifies that he had no recollection of the blot or erasure alluded to, it could not have been noticed or considered by the insurers as altering the terms of the application ; and I think that the incident was by mere accident, and without design of altering the *terms* of the application. The intention of the parties, however, must be gathered from the contract in the policy, and not from the slip, which cannot, in any case control the plain language of the policy. The words of the policy are, " Silas E. Burrows, on account of      do make insurance, and cause      to be insured, lost or not lost, at and from New-York to Carthagena, upon the body, tackle and apparel, and other furniture of the good American brig called the Burrows," &c. The insurers it appears, were apprised of the claim made by the plaintiff, as he notified the company that one sixth of the amount of insurance had been effected on his account ; the defendant, however, claimed for a total loss under the policy, which claim was admitted by the company and they paid him the money. Their understanding of the policy, therefore, is evident, and cannot be mistaken.

It was testified by the president of the company, that in a conversation between the plaintiff and defendant, the latter stated, that if the plaintiff would consider himself as interested in one sixth of the *vessel, cargo* and *freight,* as was originally intended, he would settle with him on that basis ; the plaintiff objected, and insisted he was interested in one sixth of the vessel only. The plaintiff did not deny that this was the original intention. This witness also testified that the defendant asked the plaintiff if he ever gave him orders to make insurance, and the plaintiff replied that he had not. Hicks, another witness, testifies to the same declaration as to the original intention to cover the interest of the plaintiff ; and thinks, when defendant made the insurance, he did it under the impression that the plaintiff was to take one sixth of the cargo. It appears from this testimony, that the defendant understood the

plaintiff to be interested in the *cargo*, as well as the *vessel*, and that this was the original intention of the parties, as the plaintiff did not deny the fact, when the offer alluded to by the president of the company was made ; and there appears to have been some reason for this conclusion, from the circumstance of the plaintiff's having purchased a part of the vessel, and placed his son in her as master. I am unable to perceive, however, that there is any thing in this testimony which tends to strengthen the claim of the plaintiff to any portion of the insurance. The most that can be made of it is an offer by the defendant of an amicable adjustment of the differences between him and the plaintiff; that if he would consider himself liable for the loss on the cargo and freight, as well as the vessel, as was originally intended, a settlement should be made on that basis. This the plaintiff refused to accede to, and there was an end of the matter.

The plaintiff admitted that he never gave the defendant any orders to insure his part of the vessel, and the defendant had therefore no authority to effect such insurance. One part owner cannot, by ordering an insurance of the ship, without authority from the other, charge the other with any part of the premium. Abbot on Shipping, 112. Had defendant undertaken to insure the interest of the plaintiff, therefore, and had the vessel arrived in safety, he could not have recovered of him any part of the premium, had he refused to pay it.

It was further insisted by the counsel for the plaintiff, that as defendant was to complete the vessel for sea, and acted as ship's husband, he was bound to have her fully insured, without specific orders from the other owner. But, to make a man an agent in such case, he must either have express directions from the principal to cause the insurance to be effected, or else it must be a duty arising from his correspondence with the principal ; and no general authority which he may have in relation to the ship or goods will make him an agent for the purpose of insuring on behalf of the parties interested. Therefore a ship's husband, regularly appointed by deed, executed by all the owners, with power to advance, lend, &c. to make all payments, and to retain all claims, has no right to make insurance for all, or any of the part owners, without a general

Turner
v.
Burrows.

direction from all, or a particular direction from each. Marshall, 297.

It appears to have been decided also, that if the amount in the policy had been amply sufficient to cover the whole interest of the plaintiff as well as the defendant, and had, as now only contained the name of defendant, and without the clause " for whomsoever it may concern," the insurers would not have been bound to pay an amount exceeding the interest proved in the person named in the policy. A policy in the name of one joint owner, as property may appear, without the clause stating the insurance to be for the benefit of all concerned, does not cover the interest of another joint owner. 4 Mass. R. 647.

It was also contended that the testimony as to the understanding of the mercantile community on the construction of policies of insurance ought to have been received by the court. That there are many cases where parol evidence is admissible to prove the understanding of parties to an instrument in writing, is admitted ; but, as I think, this is not one of them. The purpose, as avowed, for which parol testimony was to be introduced, was to prove a common usage. Mr. Phillips, the author of a valuable treatise on insurance, has collected under one head, all the law relating to usage, affecting the construction of policies, to be found in the books of reported cases; none of which, however, meets the object which the counsel of the plaintiff in the court below wished to prove, viz. that the universal understanding of the insurance companies and the mercantile community is, that a policy similar to the one given in evidence is tantamount to a policy containing the words " for account of whom it may concern." The instances cited by Mr. Phillips are all in cases where a difference existed between the insurers and the insured, not as in the present case, between the part owners of the vessel. One instance was, whether sarsaparilla was a root included in articles perishable in their own nature ; another, whether rice was comprehended in the term corn; another, whether Revel, in the Gulf of Finland, was included in the terms, any port in the Baltic ; and another, whether a vessel loading at Tigre Island was the same as Amelia Island, it being customary for vessels bound to and from Amelia

Island to discharge and load at Tigre Island, &c. There are several other instances cited by Mr. Phillips, in which custom will have an effect in the construction of certain words in a policy ; but, in every instance, the difference in opinion was either on the side of the assured or the insurer. See Phillips on Insurance, 15 to 18. In *Higginson* v. *Dall*, 13 Mass. R. 99, Chief Justice Parker observed, that the policy itself is in contract between the parties, and whatever proposals are made, or conversations had between the parties prior to the subscription, they are to be considered as waived, if not inserted in the policy, or contained in a memorandum annexed to it. Policies cannot be contradicted or varied by any antecedent written agreement of the parties, or by parol evidence of what passed at the time of effecting the policy. The usage of merchants, with reference to which the parties are supposed to contract, is frequently resorted to, for explaining or defining the terms of a policy ; for the terms used in policies very commonly acquire, by the well known usage of trade, a peculiar sense, distinct from the popular sense of the words. However *proof of usage is not admissible to contradict the plain unequivocal language of a policy.* 2 Phillips' Evidence, 46.

Of what avail, then, could it have been to the plaintiff, if the evidence he offered to produce had been admitted? It could not alter a single fact in the case, nor change the plain unequivocal language of the policy. The policy evidently covers only the interest of the defendant in error. The defendant was not requested to insure the interest of the plaintiff in error, and he had, therefore, no authority to insure it. If he had insured such interest, he would not have been able to recover the premium paid, had the plaintiff refused to pay it ; and it seems, by the decision in *Murray The Columbian Insurance Company,* 11 Johns. R. 313, that if he had insured the whole ship, he would only have recovered the amount of his own interest. I am of opinion, therefore, that the judgment of the supreme court should be affirmed.

By Mr. Senator WESTCOTT. I have no doubt that an owner of any given portion of interest, may effect insurance on that interest alone, or on the whole property for the benefit of the concerned, at the option of the insured. Under the circum-

ALBANY,
Dec. 1831.

Turner
v.
Burrows.

stances attending the negociating and perfecting this insur-
ance, as well as from subsequent occurrences in relation to it,
connected with the doubtful appearance of the written appli-
cation on its face, it appears to me a material question of fact
was presented, on which the *jury* ought to have been called to
decide.

The supreme court say " the plaintiff had no interest in the
policy of insurance effected by the defendant." Hicks, the
witness, says that Burrows admitted the fact; but it is said
that this admission was coupled with the condition that the
plaintiff should be interested in the cargo. I do not under-
stand the testimony precisely in that way. The admission,
that the plaintiff was originally interested in the insurance,
came out upon the direct examination; but the evidence in
relation to the impression that the plaintiff would be interested
in the cargo, was drawn forth on the cross-examination, and
that impression was more properly coupled with the declaration
of the plaintiff that he was under no obligation to take such
interest; but again, the idea of such an interest is wholly
inconsistent with the defendant's letter of instruction to the
captain. The court also say that the amount insured in this
case is precisely the value, or nearly so, of the defendant's in-
terest in the brig, at the same rate at which he sold one sixth
to the plaintiff. This proves nothing; for I understand it to
be every days's practice for merchants to become their own in-
surers in whole or in part; and it is immaterial whether a
vessel be insured for a little more or a little less than sworn and
competent judges might value her at, so that no intention of
fraud appears. Again, it is said, " the policy contains no
words importing an interest in any other than the defendant;"
but it is equally true that by the policy no interest is shewn in
the defendant himself. It only appears that he procured the
insurance to be made, but whether as an owner or agent, does
not appear. To explain this ambiguity, testimony was offer-
ed, and as I suppose improperly rejected. The court also ob-
serve, " the plaintiff had given the defendant no orders to in-
sure." Admitted he did not; neither does it appear that he
gave him orders to register the vessel, appoint her captain,
ship her crew, furnish, victual, freight, clear her or instruct the
commander. But he was the ship's husband, and all or most

of these duties, as well as the insurance, were incidental to his station, and for the faithful performance of which I consider him accountable to the owners, whether present or absent.

I admit the correctness and value of the rule, that written agreements ought to be expounded by themselves where it can be done; and with Chancellor Kent I agree that parol evidence should not be permitted to disannul or substantially vary or extend a written contract; but I do not perceive that this rule applies in the present case. The object of the parol testimony sought to be used in this instance, was not to explain the import of words capable in themselves of being understood, and conveying a definite meaning, but to give utterance to a mute member of the policy. A *blank* of itself expresses nothing, and without explanation in this instance must render inoperative an instrument otherwise complete in all its parts. An interest strictly commercial is involved, and proof of commercial custom and understanding ought to have been permitted, not to *annul, extend* or *substantially vary*, but to explain where explanation could be had in no other way; not to *annul*, for it could not be the interest of the party offering the proof to make void the instrument; not to *extend*, for all parties agree that the policy was sufficiently definite in all particulars of which it does speak; not to *substantially vary*, for there is an utter silence upon the point proposed to be explained; and yet for want of such explanation, a contract important and perfect in all its other provisions is to fall to the ground as useless and inoperative. The insurance company are willing to pay, but —————— only is authorized to receive. May it not be shewn who this *blank* is? I think it may.

I believe the exceptions to the decisions of the circuit judge were well taken, and that the plaintiff is entitled to a new trial. I am therefore for reversing the decision of the supreme court.

On the question being put, *Shall this judgment be reversed?* *four* members expressed their opinions in the affirmative, and *sixteen* in the negative. The members who expressed their opinions in the affirmative, were Senators DODGE, REXFORD, WARREN and WESTCOTT.

Whereupon the judgment of the supreme court was *affirmed.*