# �civilRichmond.

## MOROTOCK INSURANCE COMPANY v. CHEEK, MANAGER.

### APRIL 9, 1896.

1. FIRE INSURANCE—*Floating Policy—Ownership of Insured Property—Parol Evidence.*—A policy of insurance against fire, issued to the manager of a warehouse, for account of whom it may concern, on 150 barrels of flour while contained in said warehouse, is an open or floating policy, and covers, to the amount named in the policy, any goods of the character and description specified therein, which, from time to time during the continuance of the policy, may be in such warehouse under the control of the manager. In such case the policy enures to the benefit of the owner of the property at the time of the loss, although he had no interest in it when the policy was issued; and extrinsic evidence is admissible to show who was in fact concerned.

2. FIRE INSURANCE—*Action on Floating Policy—For Benefit of Owner—Case at Bar—Mistake in Proof of Loss—Waiver.*—Upon a floating policy, issued to the manager of a warehouse, an action may be brought in the name of the manager to the use of himself and the owner of the goods destroyed, naming him. Under the facts of the case at bar, the mistake in the proof of loss as to the name of the real owner of the goods destroyed, for whose benefit in part the action was brought, was waived by the defendant company, and no further proof of loss was necessary.

Error to a judgment of the Circuit Court of the city of Norfolk, rendered July 17, 1893, in an action of *assumpsit*, wherein the defendant in error was the plaintiff, and the plaintiff in error was the defendant.

*Affirmed.*

This was an action of *assumpsit* instituted in the Circuit Court of the city of Norfolk against the plaintiff in error by "W. B. Cheek, manager of the Roper Storage Warehouse,

who sues for himself and also for The Agosta Milling Company, an incorporated company."

The opinion states the case.

*Staples & Munford,* for the plaintiff in error.

*Harmanson, Heath & Heath,* for the defendant in error.

CARDWELL, J., delivered the opinion of the court.

The policy of insurance sued on in this case insured W. B. Cheek, manager Roper Storage Warehouse (in Norfolk city), for account of whom it may concern, for the term of two months from the 24th day of September, 1892, at noon, to the 24th day of November, 1892, at noon, against all direct loss or damage by fire, * * * * to an amount not exceeding $700, on 150 barrels of flour while contained in said warehouse ; the policy providing for the usual proof of loss contained in like policies, and containing also all other usual provisions and conditions.

On the 11th of November, 1892, the Roper Storage Warehouse, with its contents, was entirely destroyed by fire, together with 150 barrels of flour that assured claimed was covered by this policy ; and on December 17, 1892, Cheek, as manager of the warehouse, made out and furnished to Geo. D. Pleasants & Son, general agents of the Morotock Insurance Company, upon blanks furnished by these agents, the proof of the loss of the 150 barrels of flour as required by its policy of insurance, accompanied by the certificate of the notary public, residing in Norfolk, and most contiguous to the property destroyed, as also required by the provisions of the policy. This proof of loss set forth that the property described, that is, the 150 barrels of flour, belonged at the time of the fire to J. E. Rayl, and no other person or persons had any interest therein.

On the 5th or 6th of February, 1893, Cheek received from Arthur L. Pleasants, a member of the firm of Geo. D. Pleasants & Sons, general agents, a letter requiring of Cheek the original invoices and warehouse receipts, also the names and the address of each of the parties for whose direct benefit the insurance effected, covered either by the policy issued by the Morotock Insurance Company or that of the Agricultural Insurance Company, issued by Pleasants & Son on other property in the warehouse; and immediately upon the receipt of this letter Cheek forwarded to the agents at Richmond, Va., the original invoices and warehouse receipts called for, and along therewith he enclosed this paper:

"W. B. Cheek, Esq.,
        " Supt. Roper Storage Co.,
                " Norfolk, Va.:

" Dear Sir,—Enclosed I hand you invoices for 150 barrels flour bought of the Agosta Milling Company, which had not been accepted by me at the time of the fire. This company has forwarded me bill lading for same, with power to collect insurance for their benefit. Flour destroyed in your storage-house by fire November 11, 1892.

J. E. Rayl."

He sent also a statement showing what part of the amount of the loss he was entitled to for freight advanced, storage charges, &c., and what amount belonged to the owner of the flour destroyed. Nothing further was heard by Cheek, the assured, from the agents until March 3, 1893, when Mr. Pleasants, a member of the firm of Geo. D. Pleasants & Son, came to Norfolk and took the deposition of Cheek as to the fire, the property destroyed and the owners of the property, and in this deposition Cheek explained who were the owners of each and every species of property destroyed by the fire.

From that time until May, 1893, the Morotock Insurance Company and its agents remained silent. Whereupon, W. B. Cheek, manager of the Roper Storage Warehouse, suing for himself and also for the Agosta Milling Company, brought suit against the insurance company in the Circuit Court of the city of Norfolk to recover the amount claimed to be due on the policy, to which action the defendant company pleaded "*non assumpsit*," and at the trial of the cause, on the 17th day of July, 1893, took three bills of exceptions to the rulings of the trial court. The first is to the refusal of the court to exclude the paper purporting to be the proof of loss furnished by the assured, as before stated, and introduced in evidence by him. The second, to the action of the court in overruling the defendant company's demurrer to the evidence of the plaintiff, and the third, to the refusal of the court to set aside the verdict and judgment on the demurrer to the evidence—the verdict and judgment being for the sum of $600, with interest thereon from the 20th day of February, 1893. To this judgment a writ of error was awarded by this court.

The only error assigned and relied on in the petition of the plaintiff in error is to the ruling of the trial court in refusing to reject the proof of loss furnished by Cheek, manager, December 17, 1892, wherein he represented that the 150 barrels of flour lost in the fire belonged to J. E. Rayl, and that no other person had any interest therein.

The contention of the plaintiff in error is that, as the Agosta Milling Company had furnished no proof of loss such as is required by the policy of insurance sued on, this action brought by W. B. Cheek, manager of the Roper Storage Warehouse, suing for himself and also for the Agosta Milling Company, could not be maintained.

It is true that the proofs furnished on the 17th day of December, 1892, erroneously stated that the flour which was destroyed was the property of J. E. Rayl, when in fact it was

the property of the Agosta Milling Company, of which J. E. Rayl was the agent at Norfolk, which fact of ownership was correctly stated in plaintiff's declaration. When Cheek stated in the proof of loss furnished the defendant company that Rayl was the owner of the flour, he was simply mistaken, and the mistake occurred doubtless because Rayl, as the representative of the owner, was on the spot looking out for its interests, and Cheek did not draw the distinction between the owner and the representative of the owner. This, however, worked no harm or prejudice to the defendant company, and there is no fraud or deception charged by it, or even intimated. On the contrary, as we have seen, so soon as Cheek received the letter from J. E. Rayl of December 5, 1892, informing him that he (Rayl) had not accepted the 150 barrels of flour consigned to him by the Agosta Milling Company and destroyed by the fire, he at once forwarded that letter to the agents of the defendant company, together with the original invoices and warehouse receipts asked for by them. This policy of insurance is but an open, floating policy, in which the manifest intention of the parties is that it shall cover, to the amount of insurance named therein, any goods of the character and description specified in the policy, which, from time to time during its continuance, might be in the Roper Storage Warehouse under the control of its manager. In such a case the policy applies to the benefit of the person who may own the property at the time of the loss, although he had no interest in the property when the policy was issued; and extrinsic evidence is admissible to show who was in fact concerned. Wood on Fire Insurance, sections 38 and 40; *Turner* v. *Burrows,* 8 Wend. 144.

The silence of the agents of the Morotock Insurance Company from and after the receipt of the proof of the loss furnished by Cheek, manager, and the information as to the parties who were really concerned in the loss, certainly as early as March 3, 1893, cannot be considered otherwise than as a

waiver by those agents of any further proof of the loss. Therefore Cheek, the assured, had the right to institute this suit to recover the value of the goods destroyed, and out of the recovery to pay himself to the extent of his interest, and the balance to pay over to the owner. Wood on Fire Insurance, sections 280, 281 and 282.

We are of opinion that there is no error in the judgment of the Circuit Court of Norfolk city, and it is therefore affirmed.

*Affirmed.*