EVANS, District Judge.
The defendant, under date of October 10, 1900, issued to the plaintiff’s intestate a policy of insurance, which, very long and elaborate, is not set out in full, although those characteristics might serve to illustrate the important questions to be determined. It provides that:
“The Employers’ Liability Assurance Corporation, Limited, of London, England, in consideration of the warranties hereinafter set forth, and of Twenty ° 0/100 Dollars, does hereby insure S. W. Francis of Iron Bridge engaged in the business or occupation of a Tobacco Buyer under classification Pfd for the term of 12 months from noon of the 10th day of October 1900 against bodily injuries within the meaning of this Policy caused by external, violent and accidental means during the period covered by this Policy, subject and according to the agreements and conditions herein contained -which are to be considered as conditions precedent, in the principal sum of Five Thousand Dollars.”
Then follow 13 clauses or conditions, designated by letters of the alphabet from A to M, inclusive. These clauses have no direct bearing upon any question now involved. They all appear to have reference alone to the obligations of the defendant. They carefully and in great detail limit its liability but in no sense impose any such duty upon the assured as to create as, against him any “condition precedent.”
The clauses designated by the letters N and O are as follows:
N. In the event of any accident within the meaning of this Policy happening to the Assured, written notice, containing full name and address of the Assured, with full particulars of the accident, shall be given within thirty days of its occurrence, to the Corporation’s Managers for the United States at Boston, Massachusetts, or the agent of the Corporation whose name is endorsed hereon and on demand such certificates, by medical practitioners qualified by law, and other papers of proof of claim, shall be furnished by the Assured or his representatives, at his or their own cost, as this Corporation may reasonably require. Unless affirmative proof of claim is furnished within thirteen months from the happening of. accident, no payment shall be made hereunder. No legal proceeding for recovery hereunder shall be brought within three months after receipt of proof by said Managers or said Agent, nor at all unless begun within a period of eighteen months after the happening of the accident.
O. If required by the Corporation, the medical or other agent of the Corporation, shall in ease of any accident to the Assured, be admitted at all reasonable times to see and examine the nature of the injuries sustained, or in case of death to examine the body of the Assured.
Mainly upon those provisions, and particularly those of clause N, the present controversy must turn. One year had expired and the renewal premium had been paid for another year, when the injury occurred. As appears from the plaintiff’s petition, as amended, the *830 insured, S. W. Francis, on November 27, 1901, while holding his dog (described as an affectionate and docile animal) for the purpose of having what was supposed to be a bone in his throat removed by another person, was scratched on the hand by the dog. It is averred that the dog in fact had hydrophobia, and that on January 6, 1902, the insured died as the direct result of the scratch thus accidentally inflicted, both the accident and the death happening while the policy, as renewed, was in full force. Notice of the accident was not given within 30 days after it happened, and this fact, and the consequences claimed to follow therefrom, are the basis of the contentions most urged at this hearing. The defendant, while not claiming that the injury was not such as the policy covers, has demurred to the petition as amended, and the questions thus raised are nor without difficulty; but after a very careful investigation it seems to the court that the demurrer, at least, may be satisfactorily disposed of upon grounds now to be stated.
The learned counsel for the defendant in their argument lay much stress upon the words found near the beginning of the policy that the instrument is issued “subject and according to the agreements and conditions herein contained, which are to be considered as conditions precedent.” It will be observed that this phrase, stopping short, does not particularly specify to what the conditions are precedent, and that it is exceedingly remote from almost every clause in the policy to which it can have any logical or sensible reference; so remote, indeed, that it may well be supposed that the average person, in reading the policy, may have forgotten the phrase before he reached anything in the contract to which it could have any legitimate or intelligible application. It may, indeed, be assumed to be true that every written contract is made “subject and according to the agreements and conditions” contained in it, and every ordinary man would so understand, but what the words', “which are to be considered as conditions precedent,” used in the policy sued on, mean, may well admit of doubt when we give them a more than superficial consideration in connection with the entire writing. Many of the stipulations cannot, in the accurate sense, be “conditions precedent” to anything when viewed in connection with any of the lettered clauses of the policy from A to M, inclusive. The character of the contract is such that little could be a condition precedent, so far, at least, as the completion of the agreement is concerned, except the payment of the premium. When that was done for the second year, the contract was put in full force for that year, and, unless the words “conditions precedent” can fairly be held to refer to some remotely subsequent clause in the writing, they are meaningless.
Coming to clause N, the difficulties do not disappear, for, when we go back to ascertain what the words “conditions precedent” mean in connection with that clause, the subject is not entirely free .from doubt, at least so far as respects the consequences to result from a failure to give notice of the accident within 30 days after it happened. These doubts grow out of the fact that no penalty is annexed bv the stipulations of clause N to the mere failure to give the notice, while by the terms of the clause the company is altogether released if af *831 firmative proof of the claim is not furnished within 13 months from the time of death, and with a like result if suit is not brought within 18 months from that event. The fact that the penalty of loss of the insurance is stipulated to be.the result of failing to furnish affirmative proof within 13 months, and also of a failure to sue within 18 months after the death of the insured, while no prescribed penalty follows the failure to give the required notice, is a very strong ground for supposing that the use of the words “conditions precedent” did not, of itself, show that the parties intended that there should be a forfeiture for a failure merely to give notice as distinguished from furnishing “affirmative proof of the claim,” and that, whatever the words “conditions precedent” meant, or whatever other consequences were intended, the parties, in making their contract, did not intend that it should mean that a forfeiture should result from a failure merely to give the notice of the accident if the other proofs were furnished in due season. If so, they would have expressly said so, as they do in regard to a failure to furnish proofs or to bring suit. In the opinion of the court, this is the proper view to take of it, and this conclusion seems to harmonize with that of the Court of Appeals of Kentucky in the cases of Kenton Ins. Co. v. Downs, 90 Ky. 236, 13 S. W. 882, and American Central Ins. Co. v. Heaverin, 35 S. W. 922. The rule of construction in Kentucky, as determined by the Court of Appeals in the cases referred to, and which were decided in 1890 and 1896, respectively, seems to be that, where the stipulations of a policy annex no forfeiture or penalty to a failure to perform a certain condition, but do in express terms annex a forfeiture or penalty to a failure to perform other conditions, the omission in the first instance is to be regarded as intentional, and as clearly indicating that no forfeiture was intended, unless in the cases expressly provided for. See, also, Vangindertaeler v. Ins. Co., 82 Wis. 112, 51 N. W. 1122, 33 Am. St. Rep. 29. This rule, indeed, is so old and so generally recognized as long since to have crystallized in the maxim, “Expressio unius est exclusio alterius.”
As the policy sued on was a Kentucky contract, executed after those cases were decided, the rule they establish appears to be somewhat strengthened by the principles announced by the Circuit Court of Appeals of the Eighth Circuit in the case of Fidelity, etc., Co. v. Lowenstein, 38 C. C. A. 29, 97 Fed. 17, 46 L. R. A. 450. This result seems also to be emphasized by the well-known rule that the language of insurance policies, being always that of the company, should be construed most strongly against it. This rule has been repeatedly maintained by the Supreme Court, and as forcibly, perhaps, in the cases of the First National Bank v. Hartford Ins. Co., 95 U. S. 675, 24 L. Ed. 563, and American Surety Co. v. Pauly, 170 U. S. 133, 18 Sup. Ct. 552, 42 L. Ed. 977, as in any others. As showing the views of this court on the subject, it may not be inappropriate to refer to what it said in its opinion in Sudduth v. Travelers’ Ins. Co. (C. C.) 106 Fed. 823, 824, namely:
“One or two propositions, however, may be regarded as established: First. The language of conditions in policies of insurance must be construed most strongly against the insurance companies, because it is to be regarded as much *832 more the language of such companies than that of the insured. Second. The language of such contracts must he construed according to its ordinary and generally accepted meaning, and should not he given any expanded signification not fairly to he supposed to have heen equally within the contemplation of both parties when contracting, and as expressing their .mutual intentions at that time. * * * If there is a fair doubt as to the meaning of the words used in a policy, it should he solved in favor of the insured, because there appears to have heen no reason why the plainest words could not have heen employed by the company in framing the condition.”
If there is any uncertainty as to the proper construction of the policy in this case it should be resolved against the company, because it was especially within its power to make the language of the policy so clear and unambiguous as to leave neither party to the contract with any reasonable doubts as to what its stipulations meant. It is of the very essence of every contract that the minds of all parties to it should meet upon all its stipulations. The contract sued on in respect to the words “conditions precedent” is not only doubtful and ambiguous, but it is well-nigh subject to'the criticism of the court in the case of Ætna Ins. Co. v. McLead, 57 Kan. 95, 45 Pac. 73, 57 Am. St. Rep. 320, where, in speaking of a condition respecting' arbitrations, the court said that it was “too indefinite to be valid and enforceable.” If this be so, we must construe clause N upon its own language, and'without reference to the words “conditions precedent,” found in another part of the policy, though, in the opinion of the court, the results would be the same.
The insured in the case before us died 40 days after the accident. What his condition was in the meantime does not appear from the petition, but it is strongly urged that notice was not given until 48 days had elapsed after the accident, and that, as notice was not given within 30 days after that event, all liability on the part of the defendant ceased. If what we have already said be correct, that result should not follow. Besides, a careful analysis of clause N of the policy shows it to stipulate that, in the event of any accident to the assured, written notice containing the full name and address of the assured, with full particulars of the accident, shall be given to the company within 30 days after the occurrence, and that on demand certificates of medical practitioners, etc., and other proof of claim, shall be furnished by the assured or his representatives at his or their costs, as the company may reasonably demand. It further stipulates that, unless “affirmative proof” of claim is furnished within 13 months from the time of death, no payment shall be made under the policy, and also that no recovery shall be' had unless suit is begun within 18 months from the time of the death, etc. Whether the “affirmative proof” of claim referred to in the clause is that which the company demands, or whether it is something else, may admit of doubt, as may the question of whether there can be any forfeiture unless the failure to furnish affirmative proof is a failure to furnish what has been, in fact, demanded by the company. These matters are not altogether, clear, but two things about clause N are manifest, namely:- First, that no forfeiture is, in terms, annexed to a mere failure to give notice of the accident within 30 days; and, second, that no form is prescribed either for the notice or for the affirmative proof of claim, ex *833 cept in the respects just pointed out, and where the company may demand medical certificates, etc. These matters are of much importance, especially in connection with the fact that the petition contains averments in this language:
“The plaintiff further states that he gave to the defendant notice of the death of said Francis, and full particulars of the accident, and of his claim under said policy A, 129,263, on the 13th day of January, 1902, and thereafter, on the 11th day of March, 1902, delivered to the defendant full proofs of the said accident and death of the said Francis in manner and form as required by the defendant, and at the same time the proofs were accepted as sufficient by the defendant, and have ever since said time and are yet held by the defendant without objection.”
Assuming, for the purposes'of the demurrer, that those averments are true, what must be the consequences? is another most important inquiry. One of them is that it stands admitted that notice of the death of Francis-and full particulars of the accident and of the plaintiff’s claim under the policy sued on was given the defendant on January 13, 1902—seven days after the death; and, further, that on the nth of March, 1902, the plaintiff delivered to the defendant full proofs “in manner and form as required by” it; and also that at the same time “the proofs were accepted as sufficient by the defendant,” who has ever since held them without objection. With these things admitted to be true, must not the demurrer be overruled? We think that result cannot be avoided, especially when this phase of the case is viewed in connection with what we have held to be the proper construction of clause N of the policy. It is a very well settled rule, where defective proofs are furnished within the prescribed time, if an insurance company receive and retain them, and make no objection, a waiver of all objections thereto is inferred; and a similar result may follow if there is any additional act “required” by the company and performed by the insured after the first proofs are furnished after the time fixed in the policy. The cases and authorities which support these propositions are very numerous. McFarland v. U. S. Mut. Ac. Asso., 124 Mo. 204, 27 S. W. 436; Vangindertaelin v. Phœnix Ins. Co., 82 Wis. 112, 51 N. W. 1122, 33 Am. St. Rep. 29; Trippe v. Poor Fund Society, 140 N. Y. 23, 35 N. E. 316, 22 L. R. A. 432, 37 Am. St. Rep. 529; Morstock Ins. Co. v. Cheek, 93 Va. 8, 24 S. E. 464, 57 Am. St. Rep. 782; Joyce on Insurance, §§ 3362, 3367, and the numerous cases cited, including Protection Ins. Co. v. Harmer, 2 Ohio St. 476, 59 Am. Dec. 684; Ligon v. Insurance Co., 87 Tenn. 341, 10 S. W. 768; Weed v. Hamburg, &c., 133 N. Y. 394, 31 N. E. 231. See, also, Burlington Ins. Co. v. Lowery, 61 Ark. 108, 32 S. W. 383, 54 Am. St. Rep. 196; Travelers’ Ins. Co. v. Edwards, 122 U. S. 457, 7 Sup. Ct. 1249, 30 L. Ed. 1178.
As against the claim of the company in this case that all rights of the insured were forfeited and lost by reason of the failure to give notice within 30 days after the accident occurred, and as supporting the doctrine of the Kentucky cases, we may advert to that of the Supreme Court announced in Insurance Company v. Eggleston, 96 U. S. 577, 24 L. Ed. 841, “that forfeitures are not favored in the law, and that courts are always prompt to seize hold of any circumstances that indicate an election to waive a forfeiture.” Supplementing this *834 is the view of the Supreme Court of Wisconsin in the case above cited from 82 Wis. 112, 51 N. W. 1122, 33 Am. St. Rep. 29, where it was said that, “to prevent forfeiture, courts are bound to construe such contracts as strongly against the insurer and as favorably for the insured as their terms will reasonably admit.” So that if, by any possible construction, it could be held that there might have been a forfeiture in this case, we ought still to hold, on the admitted facts, that it has been waived by the “requirement,” the “receipt,” and the “retention, without objection,” of the notice and proofs, averred in the petition to have been given.
Undoubtedly the provisions of the policy to which we have referred were put into it for the benefit of the'defendant. That being so, in this case, as in all other instances of that character, that benefit and those provisions may be waived by the party interested in them; and, if the allegations of the petition be true—as the demurrer admits is the case—then that was the legal result here. Two steps were required to be taken by the insured, namely, first, to give notice of the “accident” within 30 days of its happening, and, second, to furnish “affirmative proof” of the claim within 13 months from the “death” of the insured. The reasons of the company for requiring these steps were important and obvious, but, as stated, those reasons all operated for the benefit of the company, rather than for the plaintiff. The first step was manifestly important, but probably less so than was the second. The first might not include the second, but necessarily the second would include the first, for it would be impossible to make affirmative proof of the loss under the policy without thereby giving to the insurer notice of the accident. And it cannot be doubted, upon the authorities cited, that any waiver resulting from the receipt and retention of the notice and proofs included and reached to the failure to give the notice at an earlier date. The learned counsel for the defendant do not seem to contest the proposition that the receipt and retention of “proofs” as distinguished from “notice” would be a waiver if there had been no condition precedent as to notice within 30 days after the accident; but they insist, in effect, that, as the policy was avoided by the failure to give the notice, the doctrine of waiver can have no application or power to revive a contract that had been extinguished. But, as indicated, the court does not think that the policy will bear that construction—a view, it may be remarked, which seems to be enforced by considering the short time limit of 30 days for the “notice,” as compared with the 13 months for the “affirmative proof of the claim” and the 18 months for bringing suit.
In short, the "court is of opinion that a proper construction of the policy does not support the contention of the defendant that a failure to give notice of the accident within '30 days destroyed and forfeited the rights of the insured under the policy; and, furthermore, that if any proper construction of the policy would otherwise have relieved the defendant because of the failure to give the notice within that time, this result was avoided by that waiver which was involved in the receipt and retention without objection of the notice and proofs of the death of the insured as shown in the petition.
The demurrer is accordingly overruled.