NETTIE CORRELL, Appellee, v. NATIONAL ACCIDENT So-
CIETY, Appellant.

Accident insurance: NOTICE OF DEATH: SUFFICIENCY. The prelim-
1   inary notice of an accidental death containing "full particu-
lars" as required by the terms of the policy, is such notice of
the fact of death, the time and cause, so far as known, as will
enable the insurer to intelligently prosecute an investigation;
the notice is no part of the proofs of death and need not give
the details of the accident.

Same. Where an accident association makes no objection to the
2   sufficiency of the notice of a death, but after volunteering pay-
ment if the proofs warrant, simply calls for the names of wit-
nesses which the beneficiary is under no obligation to furnish,
the company thereafter is in no situation to complain of the
sufficiency of the notice.

Same: REQUEST FOR BLANK PROOFS OF DEATH. Where an insurance
3   company agrees to furnish blanks for proof of death and the
preliminary notice of death is sufficient to present the idea
that the same are desired by the beneficiary, that is all the no-
tice is required to state in that respect, in the absence of a con-
tract for a more specific provision; and the beneficiary may

thereafter wait until the time limit for sending the same and then proceed within a reasonable time to make up the proofs.

**Accidental death:** POLICY EXCEPTIONS FROM LIABILITY: INSTRUCTIONS.
4  The provisions in an accident insurance policy that the association shall not be liable for an accident or death the result of voluntary and unnecessary exposure, or while walking or being upon the road bed of any railway, are separate and distinct exceptions and proof of either will defeat recovery; so that an instruction which recognizes both exceptions as constituting but one defense, and applies rules of proof thereto which are only applicable to each when considered separately, is erroneous.

*Appeal from Benton District Court,*— HON. J. M. PARKER, Judge.

TUESDAY, JULY 7, 1908.

ACTION at law to recover on two accident insurance policies. Trial was had to a jury, and there was a verdict and judgment for plaintiff. Defendant appeals.— *Reversed.*

*Whipple & Brown* and *McBurney & McBurney,* for appellant.

*Nichols & Nichols,* for appellee.

BISHOP, J.— The policies in suit were issued to the husband of plaintiff, John D. Correll. Each bears date July 20, 1905, and contains the same promises and provisions. For the purposes of the case, they may therefore be considered as one policy. Among other things, it is promised that if the insured meet death by reason of personal bodily injury, through external, violent, and accidental means, and resulting solely and independently of all other causes, the full sum stipulated shall be paid. Among other provisions are these: " The insurance under this contract does not cover . . . suicide; . . . willful or unnecessary exposure to apparent danger; . . . intentional injuries

inflicted by the insured or any other person; walking or being on the roadbed of any railway." Written notice of the happening of an accident is required to be given the society at once upon the happening thereof, and a failure to do so within ten days shall invalidate the policy. "Unless affirmative and final proofs, containing answers under oath to questions in the blank furnished by the society upon request for that purpose, are filed with the society within one month from date of death . . . all claims for benefits based thereon shall be waived and forfeited to the society. . . . No legal proceedings for a recovery under this policy shall be brought within three months after the receipt by the society of proofs as above stated, and the society shall not be liable in any legal proceedings unless the same is commenced within six months from date of receipt of such proofs." The said John D. Correll met his death on October 16, 1905. He was found at about 9 :30 o'clock p. m. on the tracks of the Illinois Central Railroad at Waterloo, his body being cut in two. Defendant admits the death of Correll, but denies that the same was the result of personal bodily injury, through external, violent, and accidental means, and independent of all other causes. Further, it resists payment on the ground of the violation and failure to comply with each of the policy provisions to which we have made reference above.

I. At the close of all the evidence, defendant moved for an instructed verdict on the grounds: (a) Written notice of the accident was not given, as required; (b) final proofs were not filed within the time and on blanks, as required; and (c) no final proofs having been filed, the action is not maintainable. The fact situation, shown without dispute, necessary to an understanding of the questions presented, is as follows: On October 18th, plaintiff wrote defendant, in substance, that her husband had been killed in Waterloo, "apparently crossing or waiting to cross the tracks of the Illinois Central Railroad to his boarding house." After

making reference to her circumstances, the letter continues: "I wish you would please be so kind as to hasten settlement as I am very needy." And the letter closes by asking that the society "attend to this as promptly as possible." On October 24th, the secretary of the society responded, saying: "We have your letter notifying us that your husband was killed at Waterloo . . . and stating that it was apparent that he was crossing or waiting to cross railroad tracks. There seems to be some doubt about this, and I wish you would give us the names of the witnesses to the accident, or who were with him just prior to the accident, and the names of those who first arrived after the accident. We will give the claim our immediate attention, and if the proofs show that the claim is a valid one, you will be paid." Plaintiff in testimony neither affirms nor denies receipt of this letter, but she says that "the company never mailed me any blanks on which to make proof of death." And counsel for defendant do not pretend in argument that the evidence in the record makes showing to the contrary. Plaintiff says she waited for the society to act until in November, when, hearing nothing, she placed the matter in the hands of Mr. Nichols, her attorney. Nichols, as a witness, testified that he prepared proofs of death in the form of affidavits setting forth the circumstances of the accident and forwarded the same to defendant in January, 1906. In the letter of transmittal, request was made that the society, after arriving at a conclusion, advise him of the action taken. On January 24th, the society responded, acknowledging receipts of the affidavits. In the letter, the statements in the affidavits respecting the circumstances surrounding the death of Correll are criticised as unreasonable, and it is said: "We have made a thorough investigation, and, while there were no witnesses, it is quite evident that he was on a railway roadbed, and on this account we supposed the claim abandoned." It is also said in the letter that no request had ever been made for blanks for proofs as required by the policy, and that "if it is your

intention to encourage . . . a claim, we will upon re-
quest furnish a blank, although it will be understood that in
so doing we waive none of our rights." In a further letter,
written on February 24, 1906, in answer to a request by
Nichols for a copy of plaintiff's letter of October 18, 1904,
the secretary of the society discussed the circumstances of
the death of Correll as understood by the society, and closed
by insisting that death came while the insured was on a rail-
road track in violation of the terms of the policy. This ac-
tion was commenced on July 16, 1906.

Having the fact situation before us, we may now give
attention to the several grounds of the motion, taking them
up in their order. That the letter of plaintiff considered

1. ACCIDENT INSURANCE: notice of death: sufficiency.
as a notice of the accident was not fatally de-
ficient is very clear to our minds. By the
letter the society was advised that Correll had
been found dead at Waterloo, in the night time, on a railroad
track, and apparently death had been caused by his being
run over by the cars. Until an investigation had been made,
no more could be authoritatively stated. The requirement of
a notice in such cases is that the fact of death be stated, and,
as far as known at the time, the cause thereof. *Simons v.
Association,* 102 Iowa, 267. The notice is no part of the
proof, but is intended to advise the insurer that an accident
has happened because of which a claim will be made under
the policy, and to the end that such insurer may for itself
prosecute inquiry into the fact of the accident, and the cir-
cumstances thereof. And " full particulars " must be taken
to mean sufficient of the particulars to enable the insurer to
intelligently prosecute such inquiry. It does not mean that
all the details of the accident must be incorporated in the
notice. 1 Cyc. 277, citing *Accident Co. v. Card,* 13 Ohio
Cir. Ct. R. 154; *Brown v. Association,* 18 Utah, 265 (55
Pac. 63).

Moreover, in this case it is quite apparent that the de-
fendant society did not come to regard the notice as wanting

in any respect until the matter of a defense to the action was being arranged. The secretary, in replying to the notice, did not intimate that it was deficient, but volunteered the information that payment would be forthcoming if the proof to be furnished warranted the making thereof. True, he asked the names of witnesses to the accident, but that was not a call for particulars. On the contrary, he was seeking an avenue of independent investigation, and as plaintiff was not bound on any theory to furnish the secretary with a list of witnesses, defendant is in no position to complain that she did not do so.

2. SAME.

So, also, while the letter of plaintiff does not in form of words request the sending on of blanks, yet such was the clear purport thereof. The society had agreed to furnish blanks on which to make proofs, and the language used in the letter was sufficient to present to the mind of the average man the idea that she wanted to be put in position to prove up her claim. In all fairness, that was enough. If the policy of the society was to insist for nonliability unless requests for blanks were couched in a particular form of words, to be effective it should have not only incorporated the feature in its contract, but given warning that failure of observance would be fatal to the policy claim. As defendant had agreed to furnish blanks on which to make proof, and as it did not do so, it is in no position to complain that proof was not made on time. Plaintiff had the right to wait for the coming of the blanks, and, if not received within the time limited, to thereafter proceed in her own way, and within a reasonable time, to make up the proofs. *Gellatly v. Association,* 27 Minn. 215 (6 N. W. 627). And what would be a reasonable time, as far as that was a matter at issue, was a question proper for the jury to decide.

3. SAME: request for blank proofs of death.

The evidence makes it appear, as we have seen, that the proofs of death furnished were not objected to because lacking in form or sufficiency of statement within the requirements

of the policy. The criticism went only to the merits of the claim, and the offer made to the attorney, Nichols, to furnish blanks, did not amount to an objection to the form of the proof, or a demand for further proof. In this situation, we may forego further consideration of the proofs as furnished. It remains only to be noticed that this action was commenced within six months from the time the proofs of death were filed with the society. These considerations lead to the conclusion that the motion to direct a verdict was properly overruled.

II. Without serious controversy, the evidence made it appear that John D. Correll came to his death by being run over by a train of cars. No one saw the accident, but the

4. ACCIDENTAL DEATH: policy exceptions from liability: instructions.

body was found on the track, severed in twain, the head and shoulders between the rails, and the remaining portion outside the south rail, and the place was some three hundred yards distant from any highway or other public crossing. In the thirteenth instruction, the court told the jury that the defendant had interposed these, among other, defenses: (a) Voluntary and unnecessary exposure; (b.) that the said Correll met death while walking or being on the roadbed of a railway, and that " it is incumbent on the defendant to establish said several defenses by a preponderance of the evidence." The fourteenth instruction was as follows: " The defendant claims that the said Correll came to his death from voluntary or unnecessary exposure to danger, walking or being on the roadbed of a railway, and by reason of such exposure to danger the defendant is not liable in this action. Under this issue it is incumbent on the defendant to show that the said Correll consciously and intentionally exposed himself to danger by being or walking upon said railway roadbed. You are instructed that voluntarily being or walking upon said roadbed .does not show of itself that he voluntarily or unnecessarily exposed himself to danger."

The instruction thus quoted is assailed as error, and

we think with reason.   Involved therein, without doubt, is a misconception of the state of the issues, and the proofs addressed thereto.   Looking to the provisions of the policy, it will be observed that it excludes from liability accidents which happen as the result of " voluntary or unnecessary exposure to apparent danger."   So, also, it excludes those that happen while " walking or being on the roadbed of any railway."   These exceptions, as embodied in the policy, are separate and distinct, and it was clearly intended that proof of either one should be sufficient — as it would be — to avoid the policy.   And the defendant, in answer, sought to advantage itself by pleading both the unwarranted exposure to an apparent danger, and that the death of Correll came while he was on a railway track.   Now, an " apparent danger " is one which is capable of being seen or otherwise comprehended through the medium of the senses.   Webster's Dictionary; Century Dictionary.   And to constitute a voluntary or unnecessary exposure, the danger must either have been known to the insured in fact, or one which in the exercise of his faculties as an ordinarily prudent person should in reason have been known to him.   *Follis v. Association,* 94 Iowa, 435.   See, also, Cyc. 261, and cases cited in the notes. As proof that the danger was apparent, and that the exposure thereto was voluntary or unnecessary, are prime requisites of the defense, it follows quite logically that the insurer must assume the burden of making such proof.   *Follis v. Association, supra.*

But when we come to the defense of walking or being on a railroad track, the situation is in some respects materially different.   It is the act of walking or being on a railroad track that is inhibited by the policy, and, conceding the burden to be on the insurer, no more is necessary in making out the defense than to bring forward proof of the naked fact, coupled, of course, with proof that the injury of death complained of occurred from a cause inhering in the hazards peculiar to such place.   *McClure v. Association,* 133 Iowa,

224; 4 Cooley, Insurance Briefs, 3187. In such cases the insurer may of right rely upon the general presumption that all men are sane and in the full possession of their faculties, and that the insured in going upon a railroad track went there knowingly and voluntarily. Accordingly, when the insurer has made proof of the fact that the insured met his death while on the track of a railroad, and by being struck by a train moving over such track, he may rest. The burden has then become shifted and it is for the party claiming under the policy to show that the presence of the insured on the track was for some sufficient reason excusable. The vice of the instruction, then, is that it recognizes the several exceptions found in the policy as constituting but one, and therefore presenting but a single defense, and it applies to that one the rules respecting proof which are separately applicable to each, and, as we have seen, not in all respects applicable to both.

As the case must be sent back for a new trial, we need not notice other errors assigned. None thereof are likely to again arise.

For the error in the fourteenth instruction, the judgment must be reversed, and a new trial awarded.— *Reversed.*