## METROPOLITAN CASUALTY INSURANCE COMPANY *v.* McAULEY.

1. It is not ground for a new trial that the court admitted in evidence, on the trial of a case based upon a policy of accident insurance, which required that preliminary notice of the death of the insured should be given and the cause and circumstances of the death stated with full particulars, a paper purporting to contain such notice, which was objected to on the ground that it was wanting in fullness and particularity, when, though the objection may have been good at the time it was raised, the deficiencies pointed out were supplied by written documents subsequently, in the course of the trial, introduced in evidence.

2. While affirmative written proof of the death of the insured was required by the terms of the policy to be furnished "on and in conformity with blanks supplied by the company," the court did not err in admitting written proof of death offered by the plaintiff, though not on forms supplied by the company, it appearing that the forms supplied by the company contained affirmative statements which the plaintiff could not make, and which if made would have been mere conclusions from the facts and circumstances actually stated; that the written proof of death offered in evidence was in substance a compliance with the requirement; and that the forms furnished did not contain space sufficient to allow the written answers to questions propounded.

3. Where a brief delay in supplying proofs of the death of the insured in a policy of accident insurance is attributable, not to the laches of the beneficiary, but to a failure of the insurance company to furnish with reasonable promptness the blank upon which the proof was made out, the beneficiary will not be held to a strict and literal compliance with the policy stipulation relative to the time within which final proofs of death should be submitted.

4. Whether the evidence in this case pointed equally or indifferently to the theory of accident or suicide was a question for the jury, and the court properly left it to them for determination.

5. There was sufficient evidence to authorize the verdict.

FEBRUARY 16, 1910.    REHEARING DENIED MARCH 1, 1910.

Action upon insurance policy.    Before Judge Fite.    Whitfield superior court.    December 10, 1908.

Mrs. Belle E. McAuley brought suit against the Metropolitan Casualty Insurance Company to recover the sum of $5,500, alleged to be due petitioner by reason of the following facts: The plaintiff was the beneficiary named in a policy of accident insurance issued by the defendant company on the life of her husband, Sheridan McAuley. The insured died on January 28, 1907 from the discharge of a pistol.    Plaintiff alleged, that she had fully complied with the conditions of the policy; that on the 4th of February after her husband's death, she notified the company of his death on the regular blanks of the company, and furnished ample information and affirmative proof of said death according to the best of her ability; that the company had not only refused payment of the sum sued for and due her under the terms of the policy, but that it had exhibited a desire to obstruct her in the matter of making the required proofs of death.    The defendant admitted the existence of the policy described, admitted that it had refused payment because it was not indebted to the plaintiff, and denied having obstructed petitioner in the matter of making proofs of death.    Upon the trial the defendant introduced evidence to show that the death

of the insured was not due to the accidental discharge of a pistol, but was the result of his voluntary act. Other defenses relied on were, that the preliminary notice of death, furnished to the company by the plaintiff, did not comply with the requirements of the policy; and that the final affirmative proof of the death of the insured was not furnished to the company within the time stipulated in the policy for the furnishing of this proof. The jury rendered a verdict in favor of the plaintiff for the amount sued for, with interest. The defendant's motion for a new trial was overruled, and it excepted.

. *Maddox & Shumate,* for plaintiff in error.

*C. D. & F. K. McCutchen* and *W. E. Mann,* contra.

BECK, J. 1. It was stipulated in the policy of insurance sued on in this case that "Immediate written notice must be given at New York City of an accident or injury for which a claim is to be made, with full particulars thereof, and full name, and address of insured." On a blank form furnished her by the agents of the defendant company the plaintiff, on the 4th day of February, six days after the death of the insured, forwarded to the insurance company at New York the notice of the death of the insured. This paper, which was offered in evidence, so far as is material here, was as follows: "Q. Nature of injury? A. Assured dead. Q. How sustained (state cause and full particulars)? A. Found dead at residence of deceased." The plaintiff in error objected to the admission of the paper offered as preliminary notice of death, on the ground that it did not conform to that clause of the policy quoted above, in that it was wanting in fullness and particularity. It was not questioned that it had been forwarded in time, so far as appears in this ground of the motion. The court overruled the objection, and error is assigned upon that ruling. In the light of the entire record in this case, there was no error in allowing the introduction of this paper in evidence. Obviously it is wanting in fullness and particularity, but it was forwarded to the insurer, which received it and kept it. In letters addressed to plaintiff the insurer called attention to this want of fullness in the notice, and demanded further particulars. The demand was complied with, as will appear from the reading of letters set out elsewhere in this opinion, where another ground of the motion for a new trial is dealt with. The fact that the preliminary notice, as given on the

blank form furnished by the company, was retained by it, and that it elicited, by correspondence with the plaintiff, the particulars which would have obviated the objections to the formal questions in the blank, cured the defects in the paper objected to and rendered it competent evidence.

2. Error is also assigned upon the ruling of the court under which the "affirmative written proof of death" was admitted. The objection urged to the admission of this evidence was, in substance, that it did not conform to the stipulations "in the 14th clause of the policy, which required that affirmative written proof of death must be furnished to the company within two months of the death of the insured;" and that "it was not made upon and in conformity with the blanks supplied by the company," as stipulated in the policy. The clause of the policy upon which this objection was based is as follows: "Clause 14. Affirmative written proof of death must be furnished to the company within two months from death. All proofs shall be furnished on and in conformity with the blanks supplied by the company." "Claims not brought in accordance with the provisions of this clause shall be forfeited." The caption of the blank supplied by the company, so far as is material, is in the following language: "That his death was caused solely, directly, and conclusively [exclusively] by bodily injury sustained through external, violent, and accidental means, and not by deliberate or voluntary acts of his own." The caption of the blank furnished by the plaintiff, as far as is material, reads as follows: "That his death was caused directly and exclusively by and through external, violent means, the circumstances strongly supporting the conclusion that he came to his death by the accidental discharge of a pistol." The objections urged were, that the "caption" of the blank prepared by the plaintiff omitted the words, "and not by deliberate and voluntary acts of his own," which were in the "blank" furnished by the company; and that the statement, "the circumstances strongly supporting the conclusion that he came to his death by the accidental discharge of a pistol," contained in the "blank prepared by the plaintiff," is but the conclusion of the plaintiff or her counsel. The paper that was referred to by counsel in his objections to the introduction of the proof of death as a "blank" does not appear to be, upon examination, in fact a blank; and what was referred to by counsel for defendant in error as the "caption" of

said blank was a statement which the plaintiff was required to swear to, as is indicated by the formula at the conclusion of the so-called blank.    In other portions of the blank which were, to be filled out with statements relative to the occasion and circumstances of the death of the assured, the plaintiff stated with reasonable fullness and particularity the occurrences immediately preceding and succeeding the shot from the pistol by which the death wound was inflicted upon the assured.   She stated, that immediately before the shot was heard she saw the insured handling a loaded pistol, which had been a thing of some concern with him on account of his boys having taken it out and fired it; that he was alone in the room; that no one knows just how the pistol came to be fired; that as far as the circumstances of the shooting of the deceased were known to her, he being alone in a room at the time of the shooting, the circumstances supported the theory that the shooting was accidental; and that no indications that the death of her husband was the result of suicide were known to her.   In addition to this, in answer to other questions, she stated facts tending to support her contention that the pistol was fired through accident, and that it was not fired by the insured himself with suicidal intent.   In view of these statements, giving in circumstantial detail the occurrences which took place just prior to the killing and contemporaneously therewith, it can not be seriously insisted that because the affiant would not state positively that the killing of her husband was not the result of a suicide but was an accident, but gave instead the facts upon which she relied to show that the shooting was the result of an accident, the character of the paper as proof of the death of the insured is destroyed or impaired.   In the objection raised to the admission of the paper in evidence it was insisted that a part of the statement made by the affiant was a mere conclusion.   If she had stated in this paper, in the language of the prepared form furnished by the company, that the killing was not suicide but that it was an accident, such a statement would itself have been a mere conclusion of the affiant, inasmuch as neither she nor any one else could state of their own knowledge in what manner the weapon was discharged.   Besides, it appeared from the testimony of the plaintiff that she did not use the blanks furnished by the company, because "they didn't leave enough margin to fill

out the blank, and it had to be made over again to give me space
to fill them out."

3. The court charged the jury as follows: "I charge you further
that if the jury finds that the defendant company, within the time
allowed by contract for making preliminary proof of death, refused
payment of the claim to plaintiff, or denied its liability to plaintiff,
then such refusal or denial of liability dispensed with the necessity
of making an affirmative proof under the policy, and plaintiff was
not under any further duty, after such refusal or denial of lia-
bility, to make such formal proof of death." Counsel for plaintiff
in error contends that this charge was erroneous and prejudicial to
his client, "because there is no evidence in the record that movant
ever refused payment of the claim or denied liability, and certainly
not before the preliminary proof of death was made." Even if we
agree with counsel in his contention that there was no evidence in
the record tending to show that movant ever refused payment of
the claim or denied its liability, we are of the opinion that in the
light of all the facts and circumstances disclosed in the record this
verdict ought to be set aside because of the instructions contained
in the language last quoted·from the charge. A careful reading of
the record shows that the preliminary notice required by the policy
and final proofs of death of the insured were sent to the company
and received by it. As we have seen above, the preliminary notice
of the death was sent within six days after the occurrence of the
event, and no question was raised as to that notice having been sent
in time. We have also seen that the objections to the sufficiency of
that notice were all based upon the ground that the notice did not
comply with the requirements of the provisions of the policy, in
that it was wanting in fullness and particularity. Immediately
after the receipt of that notice the following letter was sent by the
manager of the company to Mrs. McAuley:

"New York, Feb. 9th, 1907.

"Dear Madam:—We are in receipt of notice signed by you of
the death of your husband, Mr. Sheridan McAuley. The notice
refers to policy 2663, and we would call your attention to the fact
that this is an accident policy providing for payment in the event
that the death of your husband shall have been caused by bodily
injuries due exclusively to external, violent, and accidental means.
The notice you sent us merely states that Mr. McAuley is dead,

without referring to any injury, and the only particulars given are that he was found dead at his residence. This does not constitute a notice calling for any action on the part of this company under the accident policy mentioned."

Immediately on the receipt of the foregoing letter, Mrs. McAuley wrote and sent the following letter to the company:

"Dalton, Ga., Feb. 12th, 1907.

"Gentlemen:—Replying to yours of the 9th instant, regarding the death of my husband, Sheridan McAuley, the particulars are as follows: Mr. McAuley went into the room alone; in this room was a closet where he kept fruit; also in this closet a pistol was kept; this pistol was rarely ever taken down or used, but recently the children (our boys) had taken the pistol out and fired it. Mr. McAuley had forbidden them doing this, and, since the first occurrence, would examine the pistol to see if they had fired it. On this occasion he went into the closet as usual; there was no one in the room but himself; the report of a pistol was heard, and on entering the room we found him shot dead,—never being able to speak, or give any account of it. The blank mailed you was furnished me by your local agent at Dalton, and was furnished them by your General Agents at Atlanta. I know nothing about the proper papers to be furnished in business like this; but if your local or General Agents will furnish me with the papers, I will consider it a very great favor; will complete same and forward to you. Any other information you wish, or information as to the correctness of this, will be gladly furnished."

The company did not answer this letter until February 19th, but on that date wrote and sent to Mrs. McAuley the following letter:

"Dear Madam:—We are in receipt of your favor of the 12th instant. In reply, would say that if you feel that you should have the necessary papers to present a claim under an accident policy, we will furnish the same to you; but before doing so, we wish to call your attention to the fact that no claim can be made under an accident policy if Mr. McAuley came to his death by his own act, and in that case we would not be justified in requiring you to go to the trouble and expense necessary to prepare and furnish proofs. Your present letter, of course, does not go into details, and seems, rather inferentially than otherwise, to raise the assumption that he came to his death under certain presumed circumstances not actu-

ally known to any one.; but we understand that many of the facts were revealed at the time of this unfortunate occurrence, and that the testimony given before the coroner was such that a verdict of suicide was rendered.  We believe that in matters of this character the only way to proceed is with entire frankness, and we are therefore writing you thus candidly, and we shall be glad if you will meet us in exactly the same spirit.  This company is always ready and willing to discharge every just liability, and no more than this; we are sure you would not be disposed to expect any more than you would be able to require.  If, therefore, you feel that you should have proof blanks for presenting a claim, in view of all of the circumstances known to you, we will furnish same upon your request to that effect, accompanied with the statement of full information as to the occurrence immediately preceding and leading up to Mr. McAuley's death, which will be necessary to enable us to intelligently prepare these blanks for your use.  Please advise, also, whether or not you were in the room at the time the shot was fired, or whether any remarks had been made by Mr. McAuley to you or in your presence, indicating any intention or disposition to end his life."

Promptly in answer to this, on February 22, Mrs. McAuley wrote the following letter to the company:

"Gentlemen:—Having reference to yours of the 19th inst., I beg to request that you mail me the papers and blanks that you wish me to complete; and upon receipt of same I will return them to you properly filled in.  I will thank you to attend to this as soon as possible, as I can not make proof without the proper papers. Fire and Life companies furnish proofs of loss and death, and I suppose Accident Companies furnish them also."

On February 25th the manager of the company, in answer to Mrs. McAuley's letter of February 22, wrote the following:

"Dear Madam:—We are in receipt of your favor of the 22nd inst., requesting proof blanks.  You have apparently overlooked the latter part of our last letter, however, in which we advised that such a request should be accompanied with statement of full information as to the occurrence immediately preceding and leading up to Mr. McAuley's death; also our inquiry as to whether or not you were in the room at the time the shot was fired, or whether any remarks had been made by Mr. McAuley to you or in your

presence indicating any intention or disposition to end his life. You will understand that we are wholly without authoritative particulars, and what we have asked for is quite necessary to enable us to intelligently prepare the proper blanks."

On March 11th Mrs. McAuley wrote to the company as follows.

"Gentlemen:—In reply to your last letter, in which you state that I failed to make answer to certain questions in your letter of 19th, I want to say that I am wholly inexperienced in looking after business of this character. I have been waiting for Mr. McAuley's brother, who lives in a different city, to come and look after it. He, being ill, has delayed his coming; consequently this matter has been delayed. In your letter of the 19th you state: "But we understand that many of the facts were revealed at the time of this unfortunate occurrence, and that the testimony given before the Coroner was such that verdict of suicide was rendered." There was no such verdict rendered. If you desire it I will have the Coroner make out a certified copy before proper officials, and send you, with the other papers, when you have furnished me the necessary blanks. Referring to this same letter of yours, 19th, you asked me whether or not I was in the room. I answered that question, if you will read my letter of 12th, stating that he went into the room alone, and there was no one in the room but himself. He did not say anything before going into the room, and had never said anything to indicate his intention of destroying himself, but on the contrary his expression had always been to indicate that he would not. He had not made any statement about such a thing in my hearing in a long time; but in speaking of some other party having committed suicide some years ago, he stated that he could not see how any man could do such a thing. You asked me to be frank. I have been, so far as my business knowledge enables me to do that. Mr. McAuley had not been feeling very well for two or three days, but not sick enough to stop him from work. During the night previous to his death, some of the water-pipes about the manufacturing plant, of which he was general manager, bursted, and he had to be up getting a plumber, and looking after it. He got back home shortly before day, and did not get up for breakfast, seeming to feel worse than usual. On being asked about calling a doctor, said he didn't think it would be necessary. He got up about 12 o'clock and dressed, but did not feel like eating dinner.

When he did not eat, he would frequently take fruit; this brings up to the facts as stated in my letter of the 12th. If this statement is not full enough, please let me know. These are the facts that were before the Coroner. There was nothing in his financial condition, or domestic relations that would make him tired of life, or suggest self-destruction. I certainly think you should send me necessary blanks to prepare and present my claim in regular order, and feel sure when you know all the facts you will not doubt the justice of my claim."

And finally, on March 19th, the manager of the company from New York wrote the following letter to Mrs. McAuley:

"Dear Madam :— Your favor of the 11th inst. was duly received and contents noted ; and in compliance with your demands we hand you herewith blanks for proof of claim. In addition to the statement as per these blanks, the company requires a full copy of the proceedings of the Coroner's inquest, including all testimony taken and all statements made to the coroner and verdict rendered."

On March 29th the final proofs of the death were forwarded by Mrs. McAuley. These letters have been set out in full, because almost every line in them throws light upon the question which we now have under consideration. A comparison of the dates of the respective letters will show that Mrs. McAuley, in a letter which set forth clearly and in detail, though with succinctness, the facts attending the death of her husband so far as she was acquainted with them, asked that she be furnished the necessary papers and blanks, stating that if the company's local or general agents would furnish those papers she would complete them and forward to the company. This was within a fortnight of the death of the insured, leaving six weeks of the two months, the period stipulated in the policy, for forwarding the proofs. That letter was also a sufficient supplement to the preliminary notice written on the blank, the insufficiency of which as to particularity was complained of in the objection of counsel for plaintiff in error, considered in the first division of this opinion. Good faith upon the part of the insurer would have required a prompt response to this specific but courteous request for the papers (the forms and blanks), so that the beneficiary under this policy might have had as much of the limited time allowed her for furnishing the proofs as might be necessary. The time required for the transmission of mail from Dalton, from which

office Mrs. McAuley sent her letters to the company, to New York, or for the return of an answer, was not more than a day or two; and yet, to the letter of Mrs. McAuley dated February 12, requesting that the necessary papers be furnished her by the company, there was no reply until February 19. That letter from the company, dated February 19, speaks for itself. The writer of it professes a desire to proceed "with entire frankness," and to be writing most "candidly." It manifests a desire to save the beneficiary of the policy "trouble and expense," and declares the willingness of the company to furnish "proof blanks" for presenting a claim if Mrs. McAuley should request them. · This letter it seems to us was entirely unnecessary. The company had already been informed, by the plaintiff's letter of February 12, that she did wish the blanks. What more could the company desire than a statement upon her part that she requested the blanks; and what purpose could this last letter subserve except to delay the sending and the completion of the blanks and forms, which should have been promptly sent to Mrs. McAuley upon the receipt of the letter of the 12th of February? In that letter of Mrs. McAuley's we find the specific statement from her that on the occasion when her husband was killed "there was no one in the room but himself;" and yet in the letter from the company last referred to the manager writes her, "Please advise, also, whether or not you were in the room at the time the shot was fired," etc. Further, this letter of February 12 from Mrs. McAuley shows unequivocally, after stating the circumstances of the death of her husband, that she wished papers in order to put her claim in shape; and, as it appears from the testimony, it was written not merely at the suggestion of the local agents of the company at Dalton, but it was a copy of a letter prepared by them. When the letter from the company of February 19 was received by Mrs. McAuley, she promptly, on February 22, wrote in reply, requesting and urging that the "papers and blanks" be mailed to her. Instead of complying with this urgent request, the company wrote the letter of February 25, asking for further information before they could prepare the blanks. And then followed the final letter from Mrs. McAuley set out above, dated March 11. After the receipt of that letter there could certainly be no ground for further delay in forwarding the blanks. Every demand of the company for more information had been complied with. The time for fur-

nishing the final proofs of death, as stipulated in the policy, was rapidly passing; only two weeks and three days of the two months allowed in the policy remained; and nearly half of this time was permitted to elapse before the blanks were forwarded.

We are of the opinion that, in view of the delay by the company itself in furnishing the blanks, the slight excess of time beyond the period allowed in the policy for furnishing the proof of death could not be a ground for holding that the policy was forfeited. Only one day after the expiration of the period of two months elapsed before the proof was mailed. In view of the neglect of the company to send the blanks or forms, upon which they insisted that the proofs should be made out, with that promptness which good faith upon their part would seem to require, we think the company should be held to have waived the right to insist upon a strict compliance by the party upon whom rested the duty of furnishing the proof in accordance with the terms of the policy, in regard to the time within which those proofs should be forwarded; or that the company is estopped by its own conduct from setting up, as a defense against this policy, that a forfeiture would be worked by reason of the fact that a day or two more than the time specified in the policy was consumed by Mrs. McAuley in preparing the proofs and forwarding them, when, as appears from the letters which we find set forth in this record, the company itself had, by its own remissness in forwarding the forms so earnestly asked for, caused the loss of many days in the final preparation and forwarding of the proofs. We do not think the defendant company should be heard, under the uncontroverted facts and circumstances appearing in this record, to set up a forfeiture of the policy on the ground that the proofs had not been forwarded in time. In the case of Western Travelers' Accident Ass'n *v.* Holbrook, the Supreme Court of Nebraska held: "The beneficiary will not be held to a strict and literal compliance with the provisions of an accident insurance policy with reference to final proofs of the extent and duration of the injury, where a short delay in supplying such proofs has been occasioned by circumstances not attributable to his own laches or bad faith, and particularly where the insurer could easily have enabled the claimant to obviate its objections to the sufficiency of the proof." 65 Neb. 469 (94 N. W. 816). See also the cases of Simmons *v.* Western Travelers' Acc. Ass'n, 79 Neb. 20

.(112 N. W. 365) ; Continental Casualty Co. v. Waters (Ky.), 97 S. W. 1103 (90 Ky. L. R. 243) ; Correll v. National Acc. Soc., 139 Iowa, 36 (116 N. W. 1046).

In view of what we have said above in reference to the sufficiency of the notice and the proof of death of the insured, and in holding that the short delay in forwarding the proof could not be held to impair the rights of the beneficiary under this policy, the charge of the court last set out above, though it submitted to the jury the question as to a refusal of the company to make payment of the policy and the effect of such a refusal upon the necessity of making proofs when there was no evidence in the record of refusal, is not a cause for setting aside the verdict in this case. And it also renders unnecessary more specific discussion of the criticism in the motion upon other portions of the court's instructions to the jury, with reference to the time within which the notice was given, and the defense of the company based upon a failure of the beneficiary to furnish the proofs upon blanks furnished by the company, and in the time stipulated in the policy.

4. It is insisted that the court erred in charging the jury as follows: "If the evidence points equally or indifferently to the theory of accident or suicide, the theory of accident is to be adopted, rather than that of suicide. Then the burden would be upon the defendant company to show by a preponderance of the evidence that the deceased came to his death by suicide, as it here contends." This charge is not attacked upon the ground that it states an incorrect principle of law; but counsel contends that it was error because there is no evidence, positive or circumstantial, pointing equally or indifferently "to the theory of accident, but, as movant insists, the evidence shows that deceased came to his death by his own act." Whether or not the evidence pointed equally or indifferently to the theory of accident or suicide was, under the evidence in the case, a question for the jury." The court left it there, as he should have done, and the plaintiff in error has no ground of complaint upon that score.

5. It was earnestly and forcefully argued in this case that the evidence showed conclusively that the insured came to his death by his voluntary act; that he shot himself with suicidal intent. There was no eye-witness to the tragedy. The deceased was alone in a room at the time the shot was fired which caused his death.

He was seen a few minutes prior to the firing of the shot, handling a loaded pistol. The room was one in which, according to the testimony introduced by the plaintiff, the weapon was customarily kept; and whether or not it was discharged accidentally while the deceased was endeavoring to replace it upon a nail where it sometimes hung, or was voluntarily fired by the deceased, no one could say positively. Two theories were insisted upon, one by the plaintiff, the other by the defendant. Evidence tending to support each was introduced; each submitted evidence, one to show, the other to disprove, the cause and motive for self-destruction upon the part of the deceased. His habits, the state of his health, his domestic relations, and many other circumstances tending to throw light upon the tragedy were before the jury for their consideration. They found in effect that the shooting was accidental, and we can not say that this finding was unauthorized by the evidence.

Certain other errors were complained of; but in view of what we have said above, they are not of sufficient materiality to require discussion.    *Judgment affirmed. All the Justices concur.*