### HIRSCH–FAUTH FURNITURE CO. v. CONTINENTAL INS. CO.

District Court S. D. Florida, Miami Division. January 31, 1928.

No. 425–M.

**1. Insurance ⚖️335(1)—Insured is only required to produce books and inventories when desired or demanded by insurer.**

Insured, under policy containing a standard iron-safe clause, providing that in the event of failure to produce books and inventories the policy shall be void, is only required to produce books and inventories when they are desired or demanded by insurer.

**2. Insurance ⚖️539(5)—Insurer held not entitled to claim forfeiture, where insured gave prompt notice of damage and prepared proof of loss as expeditiously as practicable.**

Where insured, under policy requiring written notice of damage and proof of loss, gave prompt notice and prepared proof of loss as expeditiously as was practicable, though not within time specified in policy, insurer was not entitled to claim forfeiture.

**3. Abatement and revival ⚖️19—That no notice was given or proof of loss served in compliance with policy must be pleaded in abatement.**

In action on tornado insurance policy, a plea to effect that no notice was given or proof of loss served in compliance with terms of policy is one that must be pleaded in abatement, and not in bar.

At Law. Action by the Hirsch-Fauth Furniture Company, formerly Hirsch, Fauth & Harrison, against the Continental Insurance Company, removed from a state court, wherein plaintiff interposed a demurrer to the pleas filed by defendant. Demurrer sustained.

Shipp, Evans & Kline, of Miami, Fla., for plaintiff.

Cockrell & Cockrell, of Jacksonville, Fla., for defendant.

CLAYTON, District Judge. This action, brought in the circuit court of Dade county, Florida, was removed to this court. Here the plaintiff filed an amended declaration, alleging that during the life of the policy loss was suffered thereunder on account of a cyclone occurring on October 20-21, 1926. Attached to the amended declaration is a copy of the policy sued on, issued by the defendant through its Miami, Fla., agency, on October 5, 1926, insuring plaintiff for the term of one year against all direct loss and damage by windstorm, cyclone, and tornado, to an amount not exceeding $50,000, on a stock of merchandise consisting chiefly of furniture, carpets, glassware, china, crockery, musical instruments, stoves, and such other merchandise, not more hazardous, usual to their trade. The pleadings show that the total insurance on the stock of goods was $125,000, of which $50,000 was covered by the policy sued on. The declaration was in the usual form provided by the statutes of Florida, and among other things contained the following allegations:

"On October 21, or 22, immediately following the damage and injury, plaintiff orally notified the defendant of the loss, and defendant at once sent its representative to the place of business of plaintiff and inspected the damage and injury, thereby leading plaintiff to believe that the loss would soon be settled."

"Some time during the latter part of November, or the first of December, 1926, plaintiff requested of the defendant an extension of time for the filing of formal written proof of loss, explaining that the proof of loss was intricate and difficult to prepare. Plaintiff at that time requested defendant to send some one to look over and inspect the goods. This the defendant refused to do.

"Plaintiff, with all practicable dispatch after the occurrence of the damage above set forth, prepared written proof of loss, signed and sworn to by the assured, as required and designated by said policy. This proof of loss plaintiff, on December 20, 1926, deposited in the post office at Miami, Fla., under sufficient cover of postage and properly addressed to Stembler Insurance Agency, Inc., defendant's agent, who wrote the policy, which proof of loss was actually received from the post office by the defendant on December 23, 1926."

The defendant interposed no demurrer, but filed the following eight pleas:

(1) Plaintiff did not produce for the inspection of defendant the books and inventories required to be produced and kept, by that part of the policy sued on headed "Iron-Safe Clause."

(2) Plaintiff did not, within 10 days after said tornado, give notice in writing to the defendant of the loss and damage.

(3) Plaintiff did not furnish to the defendant a complete inventory of the destroyed, damaged, and undamaged property, stating the quantity and cost of each article and the amount named therein.

(4) Plaintiff did not, within 60 days after said tornado, furnish to the defendant the proof of loss mentioned in the contract sued upon.

(5) Plaintiff did not furnish the proof of loss required by the contract sued on.

(6) Defendant denies that on October 21 or 22, 1926, plaintiff orally notified defendant of the loss.

(7) Defendant denies that at once, following October 21 or 22, 1926, defendant sent its representative to the place of business of plaintiff and inspected the damage and injury.

(8) Defendant denies that on October 21 or 22, 1926, plaintiff orally notified the defendant of the loss, and defendant denies that defendant at once sent its representative to the place of business of plaintiff and inspected the damage and injury, and defendant denies that it led plaintiff to believe that the loss would soon be settled.

Plaintiff demurred to each of these pleas, and now, after having considered the many authorities, both state and federal, cited by the counsel for the parties, the court has come to the conclusion that there are only two propositions necessarily involved in the solution of this controversy on the pleadings, namely:

Is an insured required to produce the books and inventories, unless they are desired or demanded by the insurer?

Is a policy of insurance rendered inoperative, under all circumstances and conditions, by failure of the assured to give prompt written notice of the damage, and strictly within the 60 days to make written proof of loss?

If these questions be determined according to the contention of the defendant, then the demurrers should be overruled. If the conclusion be in favor of the plaintiff, the demurrers should be sustained.

[1] 1. The policy of insurance sued on contains what is known as the "standard iron-safe clause," which, among other things, provides that, in the event of failure to produce

the books and inventories for inspection of the company, the policy shall become null and void. The authorities seem to be in agreement on the proposition that an insured is only required to produce the books and inventories when they are desired or demanded by the insurer. In fact, it would be difficult, if not impossible, for an insured to produce the books and inventories for inspection unless and until the insurer would designate what particular books or inventories it desired, and indicate some one to whom such books and inventories could be produced for such inspection.

In the case of Kahnweiler v. Phenix Ins. Co., 67 F. 483(3), the Circuit Court of Appeals of the Eighth Circuit held: "When neither party demanded an arbitration, such [arbitration clause] was to be deemed waived by both." The Supreme Court of the United States, in the case of Liverpool, London & Globe Ins. Co. v. Kearney, 180 U. S. 132, 21 S. Ct. 326, 45 L. Ed. 460(6), held: "Failure of an insured to produce the books and inventory as required by a policy of fire insurance under penalty of forfeiture means a failure to produce them  * * *  when called for." Also, to same effect, see German Alliance Ins. Co. v. Newbern, 25 Okl. 489, 106 P. 826, 28 L. R. A. (N. S.) 337. I think, therefore, that plaintiff's demurrer to defendant's first plea should be sustained.

[2] 2. Following the fact of the policy sued on, are 179 lines containing various exceptions and provisos; lines 95 to 108, inclusive, being as follows:

"*Requirements in Case of Loss.*—The insured shall within ten days give notice in writing, to this company, of any loss or damage, protect the property from further damage, forthwith separate the damaged and undamaged personal property, put it in the best possible order, furnish a complete inventory of the destroyed, damaged and undamaged property, stating the quantity and cost of each article and the amount claimed thereon; and, the insured shall, within sixty days after the windstorm, cyclone or tornado, unless such time is extended in writing by this company, render to this company a proof of loss, signed and sworn to by the insured, stating the knowledge and belief of the assured as to the following."

It will be observed that in these lines (95 to 108) no forfeiture is provided for failure to give the notice or make the proof of loss as required therein. At the end of the policy, contained in lines 157 to 175, inclusive (some 50 lines below the above-quoted lines), appears the following:

"*When Loss Payable.*—The amount of loss or damage for which this company may be liable shall be payable after satisfactory proof of loss, as herein provided, is received by this company and ascertainment of the loss or damage is made either by agreement between the insured and this company expressed in writing or by the filing with this company of an award as herein provided.

"*Suit.*—No suit or action on this policy, for the recovery of any claim, shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, nor unless commenced within twelve months next after the windstorm, cyclone or tornado, provided that where such limitation of time is prohibited by the laws of the state wherein this policy is issued, then and in that event no suit or action under this policy shall be sustainable unless commenced within the shortest limitation permitted under the laws of such state."

In the opinion of the court, the validity of all of the seven (2 to 8, inclusive) remaining pleas of the defendant hinges on the proposition as to whether or not the courts, in considering exceptions or forfeiture clauses in insurance policies, will construe them strictly and in favor of the insurer, or whether such clauses will be construed liberally and in favor of the assured. If all forfeiture clauses are to be construed strictly, and in favor of the insurance company under all circumstances and conditions, then I think that the demurrers to these pleas (2 to 8, inclusive) should be overruled. On the other hand, if the construction to be placed thereon is liberal, or in favor of the assured, then these demurrers should be sustained. In the opinion of the court, the determination of this question will be decisive of the demurrers to the remaining pleas of the defendant.

Forfeiture clauses are, of course, incorporated in insurance policies by insurance companies for their own benefit. The promise to pay—the inducement to the insured—is generally in large letters and figures, on the front page, and the forfeiture clauses printed in small type on the back.

It will be observed, from the clause above quoted, that the loss and damage is payable after satisfactory proof of loss as provided by the policy is received by the company. It will likewise be observed that it is nowhere specifically stated that, unless written notice is given and proof of loss received, the policy is void. There is no attempt to make the *time* of giving these notices, the essence of the contract. In the case of Wallace v. German-Amer. Ins. Co. (C. C.) 41 F. 742, it was held:

HIRSCH–FAUTH FURNITURE CO. v. CONTINENTAL INS. CO. 219

"If the words employed, of themselves, or in connection with other language used in the instrument, or in reference to the subject-matter to which they relate, are susceptible of the interpretation given them by the assured, although in fact intended otherwise by the insurer, the policy will be construed in favor of the assured. As the insurance company prepares the contract, and embodies in it such conditions as it deems proper, it is in duty bound to use language so plain and clear that the assured cannot mistake or be misled as to the burdens and duties thereby imposed upon him."

Judge Taft, when on circuit, speaking for the court in the case of Manufacturers' Accident Ind. Co. v. Dorgan (C. C. A.) 58 F. 945, 22 L. R. A. 620, said:

"It is a well-settled rule in the construction of insurance policies of this character, which the insured accepts for the purpose of covering all accidents, to construe all language used to limit the liability of the company, strongly against the company. Policies are drawn by the legal advisers of the company, who study with care the decisions of the courts, and, with those in mind, attempt to limit as narrowly as possible the scope of the insurance. It is only a fair rule, therefore, which courts have adopted, to resolve any doubt or ambiguity in favor of the insured and against the insurer."

In using these words, the learned judge stated an accepted rule of construction, for in numerous cases in the Supreme Court of the United States, as well as the appellate courts of the states, the same rule is laid down. There seems to be no conflict as to this. It would have been quite easy for the company to state specifically, had it so intended, that time was of the essence of the contract. It did not do so.

In construing a policy similar to this, the Nevada court has recently made a thorough and apparently exhaustive search of the authorities. That court, in the case of Clark v. London Assurance Corp., 44 Nev. 359, 195 P. 809, said:

"It may be said at the outset that there are two lines of authority on the question of whether or not the failure to make proof of loss within the 60-day period bars recovery. Judge Van Fleet, in S. F. Savings Union v. Western A. Co. [C. C.] 157 F. 696 (decided in 1907), said that the courts were evenly divided on this point. Since that time, in keeping with the progressive spirit of the age, the current of authority has been strongly in favor of the rule that such a failure is not of itself sufficient to deny the right of recovery.

It is the contention of appellant that no circumstance will excuse a delay beyond the 60-day period in rendering the proof of loss. That such a view would be a harsh one to take goes without saying. In case a building which is covered by a policy similar to the one in question should catch fire through no fault of the insured, and in an effort to extinguish the fire he should be so injured as to be rendered helpless and unconscious for more than 60 days, and a total loss should ensue, would any one except defendant say there could be no recovery? In reply to the suggestion that the insured, who, being insane, failed to file proof of loss within the time limit stated in the policy, could not recover, it was said that such a proposition is too repugnant to justice and humanity to merit serious consideration (Germania Fire Ins. Co. v. Boykin, 12 Wall. 433, 20 L. Ed. 442); and the doctrine thus stated has been approved (Woodmen A. Ass'n v. Pratt, 62 Neb. 673, 87 N. W. 546, 55 L. R. A. 291, 89 Am. St. Rep. 777; Houseman v. Home Ins. Co., 78 W. Va. 203, 88 S. E. 1048, L. R. A. 1917A, 299; Metropolitan Casualty Ins. Co. v. McAuley, 134 Ga. 165, 67 S. E. 393)."

In that opinion a number of authorities are cited, sustaining the proposition that failure to give the notice and to file the proof of loss within the time required does not work a forfeiture of the policy, but has the effect only of extending the time within which the action can be brought—60 days after such proof is finally given. The court remarked that the modern current of authorities was "strongly in favor of this rule."

The late Judge Beverly D. Evans, a short time prior to his going on the bench of the United States District Court of Georgia, while a member of the Supreme Court of that state, in a case before that court involving the construction of a policy containing a clause similar to this, concurred in the opinion of the court in the case of Harp v. Fireman's Fund Ins. Co., 130 Ga. 726, 61 S. E. 704, 14 Ann. Cas. 299, in which it was said:

"Under this provision time is not of the essence of the contract as to the furnishing of proofs of loss. The policy does not provide that no suit can be maintained unless there is a full compliance with its requirements, but it provides that no suit can be maintained until after a full compliance; and in the decisions of some of the courts, this difference is made a matter of importance in determining whether or not a failure of such compliance within the time specified by the policy works a forfeiture thereof. 4 Cooley's Briefs on Ins. 3370, and cases cited.

On page 3369 of the same work the following doctrine is announced: 'The weight of authority, however, as already stated, seems to support the rule that neither a provision that the loss shall·not be payable until after the stipulated proofs have been furnished, nor the provision that no action shall be maintainable until after such compliance with the policy, will render the furnishing of proofs within the stipulated time a condition precedent. Rather do·such provisions, by their phraseology indicate an intention that the payment of loss shall be merely postponed until the proofs are furnished.'"

Prior to his going on the federal bench of North Carolina, Judge Connor, in speaking for a unanimous court, in the case of Gerringer v. North Carolina Home Ins. Co., 133 N. C. 407, 45 S. E. 773, said:

"The failure to furnish proofs of loss within 60 days after a fire, as required by a standard fire insurance policy, providing that, if fire occur, the assured shall give notice of the loss within 60 days, unless the time was extended in writing by the company, and declaring that no suit on the policy shall be sustained until after full compliance by the assured with the foregoing requirement, nor unless commenced within 12 months after the fire, did not work a forfeiture of the policy, but, unless waived, no action can be maintained until after the filing of the proof of loss."

In the case of Kahnweiler v. Phenix Ins. Co. (C. C.) 57 F. 562, the court held, as stated in the headnote: "Failure to furnish proof of loss within 30 days after a fire, in accordance with the provision of an insurance policy providing that persons sustaining loss or damage by fire shall forthwith give notice of such loss, and within 30 days thereafter render a particular and specific account thereof, does not work a forfeiture of the policy, but merely delays the date when the loss will become payable." Also see Tabor v. Royal Ins. Co., 124 Ala. 681, 26 So. 252.

In view of the fact that Judge Connor, in the North Carolina case, and Judge Coleman, in the Nevada case, both above referred to, so thoroughly reviewed the cases, both state and federal, the court is content to refer to the many authorities cited in those cases, without undertaking to review them all. While it would seem that these authorities are sufficient, attention·is directed to the fact that insurance comes under the police power of the state, does not come under the commerce clause, and is not always governed by the rules applicable to commercial transac-

tions generally. Each state has the right and power to establish its own public policy—not in conflict, of course, with the public policy of the country as a whole. Each state acts for itself as to its police power.

The Supreme Court of the United States, in the case of Hartford Fire Ins. Co. v. Chicago, M. & St. P. R. Co., 175 U. S. 91, 20 S. Ct. 33, 44 L. Ed. 84, said:

"Questions of public policy, as affecting the liability for acts done, or upon contracts made and to be performed, within one of the states of the Union—when not controlled by the Constitution, laws or treaties of the United States, or by the principles of the commercial or mercantile law, or of general jurisprudence, of national or universal application—are governed by the law of the state as expressed in its own Constitution and statutes or declared by its highest court."

Judge Sanborn, in the case of U. S. v. Trans-Mo. Freight Ass'n (C. C. A.) 58 F. 58, 69, 24 L. R. A. 73, says on page 82 of 24 L. R. A.:

"It is with the public policy of to-day, as illustrated by public statutes and judicial decisions, that we have now to deal. In considering that subject, we are not to be governed by our own views of the interests of the people, or by general considerations tending to show what policy would probably be wise or unwise. Such a standard of determination might be unconsciously varied by the personal views of the judges who constitute the court. The public policy of the nation must be determined by its Constitution, laws, and judicial decisions."

Basing its holding on a decision of the highest court of Pennsylvania, the Third Circuit Court of Appeals, in the case of Supreme Council Am. L. of H. v. Getz, 112 F. 119, held: "A contract of * * * insurance is to be construed in accordance with the laws of the state where made." In a learned opinion filed by United States District Judge Walter Evans, in the case of Hurt v. Employers' Liability Corp. (C. C.) 122 F. 828, this same view is adhered to.

It will, therefore, be seen that the courts are in agreement on the proposition that to ascertain the public policy or the police power of the state, reference is made not only to the Constitution and statutes, but to the decisions or holdings of the highest courts of the state. The Supreme Court of Florida has had occasion in three different cases to construe this clause of the policy, and has invariably, held against the forfeiture.

In the case of Hartford Fire Insurance Co. v. Redding, 47 Fla. 228(9), 37 So. 63(9),

67 L. R. A. 518, 110 Am. St. Rep. 118, the court held: "The requirements in the standard insurance policy that the insured shall give notice of loss and make proofs of loss, are conditions precedent to the right to sue, but a failure to give the notice or to make the proofs within the time stipulated will not invalidate the policy or work a forfeiture of the rights of the insured, in the absence of a stipulation to that effect, but will merely postpone the day of payment where such notice is given and proofs of loss made within such time as will enable the insured to bring this suit within the time limited by the policy." Also to same effect see National Un. F. & I. Co. v. Cone, 80 Fla. 265(1), 85 So. 913, and Indian River State Bank v. Hartford Fire Ins. Co. 46 Fla: 283(10), 35 So. 228 (10). It would seem, therefore, that Florida is committed on this proposition.

Much stress is laid by the learned counsel for the defendant on the opinion of that great jurist, Judge Call, in the case of Bank of So. Jacksonville v. Hartford Fire Ins. Co. (D. C.) 1 F.(2d) 43. No one acquainted with the long and able service of Judge Call, on the state and federal benches, can lightly pass by any opinion rendered by him. He was always honest, learned, and firm in interpreting and applying the law. His recent death is a distinct loss, not only to Florida, but to the federal bench. When that distinguished judge was on the state bench, the Supreme Court of Florida reversed his holding in a case similar to the instant one, styled Indian River State Bank v. Hartford Fire Ins. Co., 46 Fla. 283(10), 35 So. 228(10). But that most estimable judge remained "of the same opinion still," notwithstanding the Supreme Court of Florida has uniformly held this clause in a policy does not work a forfeiture.

In the case now under consideration, the court does not find it necessary, however, to take issue with the holding of Judge Call just above referred to. We are relieved of that by the allegations contained in the declaration, and which are set out in extenso in the first part of this opinion. According to the declaration it appears that the plaintiff in this case did everything it could reasonably have been called upon to do to comply with the provisions of the policy. It gave prompt notice, and prepared the proof of loss as expeditiously as was practicable.

It appears from the pleadings and the policy sued on that the total insurance aggregated $125,000, and that this large stock of goods consisted of many and various items. Necessarily it required much effort and time to properly prepare the proof of loss. The cyclone causing the loss was most destructive. It naturally disarranged affairs and made it difficult and tedious to comply with all of the provisions and niceties of policies of insurance. And while the court is of the opinion that in a case like this it should follow the pronouncements of the Supreme Court of the state rather than the opinion of the District Judge, still in this case there is not necessarily any conflict with the opinion of Judge Call. It would seem, therefore, that in this case no forfeiture can reasonably be claimed by the company.

[3] 3. In an action such as this a plea to the effect that "no notice was given or proof of loss served in compliance with the terms of the policy" is one that must be pleaded in abatement and not in bar. See Kahnweiler v. Phenix Ins. Co. (C. C. A.) 67 F. 483; Rosser v. Georgia Home Ins. Co., 101 Ga. 716, 29 S. E. 286; Joyce on Insurance, § 3282.

Under these authorities the court is of the opinion that the plaintiff's demurrers to the defendant's several pleas (1 to 8, inclusive) should be sustained; and the order will be entered.